66 Cal.Rptr.3d 359 (2007)
155 Cal.App.4th 885
Davar JAFARI, Plaintiff and Appellant,
v.
EMC INSURANCE COMPANIES et al., Defendants and Respondents.
No. B192640.
Court of Appeal of California, Second District, Division Seven.
September 26, 2007.
*361 Snyder & Dorenfeld, David K. Dorenfeld and Rodger S. Greiner, Calabasas, for Plaintiff and Appellant.
Summers & Shives, Robert V. Closson and Ian G. Williamson, San Diego, for Defendants and Respondents.
*360 JOHNSON, Acting P.J.
This is a coverage action by an insured against his insurer stemming from an action in which a customer sued the insured for, among other claims, assault and battery committed by the insured's business's manager in an altercation with the customer on the business' premises. The insurer moved for summary judgment claiming the manager's actions allegedly taken in self-defense were nevertheless intentional and deliberate, and thus outside the policy's coverage for "accidents." The trial court granted the insurer's motion for summary judgment and dismissed the action. Because existing case law indicates acts committed by an insured in self-defense can be deemed an "accident," the underlying case raised the possibility of coverage under the policy. We thus conclude the trial court erred in finding the insurer had no duty to defend the insured on the ground the manager's acts were deliberate and intentional. Accordingly, we reverse.

FACTS AND PROCEEDINGS BELOW
Plaintiff and appellant is Davar Jafari, doing business as Glendora Tire & Brake Center. During the incident at issue in this case, he was the named insured under a garage liability policy issued by respondents, EMC Insurance Companies and Employers Mutual Casualty Company. The policy provided liability coverage for garage operations other than for covered autos.
Under liability coverage the policy provided: "We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies caused by an `accident' and resulting from `garage operations' other than the ownership, maintenance or use of covered `autos.'"
The policy defined "insured" to include employees acting within the scope of their duties.
One of the exclusions in the policy was for expected or intended injury. This clause stated insurance coverage under the policy did not apply to "`bodily injury' or `property damage' expected or intended from the standpoint of the `insured.' But for `garage operations' other than covered `autos' this exclusion does not apply to `bodily injury' resulting from the use of reasonable force to protect persons or property." [1]
On August 30, 2003 Farhad Nazemzadeh came to pick up his car from Glendora Tire & Brake Center. Mark Mitchell, the manager of Glendora Tire & Brake Center, told Nazemzadeh his car was not ready for pickup. Apparently, Nazemzadeh became verbally abusive. He started yelling at Mitchell. Mitchell told Nazemzadeh to leave and to "get out of his face." Nazemzadeh apparently did not leave but continued his verbal assault, telling Mitchell he would kill him. Mitchell punched Nazemzadeh at least twice in the face. Nazemzadeh sustained a cut over his right eye which required three stitches.
Nazemzadeh filed suit against Mark Mitchell, Jafari, and Jafari doing business as Glendora Tire & Brake Center. Nazemzadeh's complaint alleged causes of action for assault, battery, negligence, intentional *362 and negligent infliction of emotional distress, premises liability and negligent hiring.
Jafari tendered defense and indemnification of the action to respondents. Respondents rejected Jafari's tender. In respondents' denial letter coverage counsel explained Nazemzadeh's suit was the result of Mitchell's intentional acts, intentional acts are not "accidents," and hence do not fall within the coverage provision of the policy. Accordingly, Jafari was required to retain counsel to represent his interests in the Nazemzadeh litigation.
Jafari then filed this coverage action against respondents for breach of contract and breach of the covenant of good faith and fair dealing for respondents' failure to provide a defense and indemnity in the Nazemzadeh litigation. Respondents filed a motion for summary judgment. Their motion asserted, "the triggering act, punching someone in the face, was in no way accidental or unintentional and thus did not result from an `accident' as that term is defined in the policy. Thus, there was no coverage and, accordingly, no breach of the duty to defend or the implied covenant of good faith and fair dealing."
Respondents attached a copy of the police report of the incident to their motion for summary judgment.[2] The reporting officer wrote in the synopsis portion of the report, "Mitchell hit Nazemzadeh in the face after [ ] Nazemzadeh threatened to kill Mitchell for not repairing his vehicle. Nazemzadeh received three stitches to his right eye." The officer took Nazemzadeh's statement. Nazemzadeh explained he went to Jafari's business and asked Mitchell to finish fixing his car. Mitchell said he was busy and would get to it when he had a chance. Nazemzadeh said Mitchell became angry and hit him three times in the face, causing a black eye and a cut above his right eyelid. Nazemzadeh told the officer Mitchell threatened to kill him if he came back or if he told the police.
The officer then spoke to Mitchell. Mitchell explained Nazemzadeh said he needed his car by the end of the day. Nazemzadeh had only dropped it off late the night before and there were several other customers ahead of him whose cars needed to be worked on first. Nazemzadeh started yelling at Mitchell and got up close to him. Nazemzadeh said he would kill Mitchell and have the Armenian Mafia beat him up. Mitchell said he was going to call the police if Nazemzadeh did not leave. Mitchell dialed a 9 and a 1 hoping Nazemzadeh would leave. Nazemzadeh started yelling at him in Armenian and kept coming closer until he was yelling in Mitchell's face. Mitchell told him to back off, and when Nazemzadeh did not, Mitchell punched him twice in the face because "Nazemzadeh refused to get out of his face and he was defending himself."
Jafari filed opposition. Jafari pointed out the term "accident" was not defined in the policy and under existing case law acts of self-defense are considered unintended and unexpected and thus "accidental" for purposes of coverage. Jafari also pointed out the policy expressly provided an exception to the exclusion for bodily injury resulting from the use of reasonable force to *363 protect persons and property. For this reason, Jafari argued, Mitchell's actions assertedly taken in self-defense raised the possibility of coverage under the policy and thus respondents owed a duty of defense and indemnity.
Mitchell filed a declaration in opposition to the motion for summary judgment, stating: "A customer, Farhad Nazemzadeh, came into the store and demanded the return of his vehicle. After I told him that his vehicle was not ready he became very upset and started to yell derogatory comments about my boss and me. I requested that he leave the store. However, he did not and he became more upset and got right up into my face. To try to get him to leave, I pretended to call the police. In response, Mr. Nazemzadeh threatened to kill me and was standing directly in front of me, yelling at me. I was afraid that he was going to strike me and, in an effort to defend myself and the store, I struck him. I then pushed him out of the store. At the time I struck him I was in fear for my personal safety and my life."[3]
In their reply, respondents agreed an issue in dispute was whether Mitchell in fact acted in self-defense. Nevertheless, respondents argued, "While the validity of the `self-defense' contentions may be in dispute, there is no question that Mitchell intended to strike Nazemzadeh, and that Mitchell's conduct caused the. injury." Because Mitchell acted intentionally, respondents argued, there could be no "accident" within the coverage provision of the policy.
By the time of the hearing on the motion respondents agreed the term "accident" was not defined in the insurance policy and agreed common law construction of the term "accident" is read into insurance policies as a matter of law. On the issue whether Mitchell acted in self-defense, respondents urged the trial court to decide as a matter of law Mitchell had not been acting in self-defense, and thus not accidentally, when he intentionally and deliberately punched Nazemzadeh in the face. Ultimately, the trial court adopted respondents' arguments. The court found the injuries alleged in the underlying action were not the result of an "accident" and for this reason did not present a covered claim giving rise to a duty of defense. Accordingly, the court granted respondents' motion for summary judgment and dismissed the action.
Jafari appeals from the adverse judgment.

DISCUSSION

I. STANDARD OF REVIEW OF A SUMMARY JUDGMENT.
Summary judgment is properly granted where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion ... and the uncontradicted inferences the evidence reasonably supports. [Citation.]"[5] In the trial court, a defendant "has met his or her burden of showing that a cause of action has no merit if that party has shown that *364 one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant ... has met that burden, the burden shifts to the plaintiff ... to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."[6]
If the non-moving party "demonstrates the existence of a triable dispute with `specific facts' (§ 437c, subd. ([p] )(2)) by making a prima facie showing of the merit of the complaint, the motion must be denied. There is to be no weighing of evidence. [Citations.]' (Kids' Universe [v. In2Labs (2002) ] 95 Cal.App.4th [870] at p. 880, 116 Cal.Rptr.2d 158.) Moreover, equally conflicting evidence requires denial of a summary judgment motion and a trial to resolve the dispute. [Citations.]"[7]
We review the court's ruling with these standards in mind.

II. APPLICABLE STANDARDS IN DETERMINING AN INSURER'S DUTY OF DEFENSE AND DEMNIFICATION.
"It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third patty lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. (Gray [v. Zurich Insurance Co. (1966) ] 65 Cal.2d [263] at p. 279, 54 Cal.Rptr. 104, 419 P.2d 168; see also, Montrose Chemical Corp. v. Superior Court [ (1993) ] 6 Cal.4th [287] at p. 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.) ... However, `"where there is no possibility of coverage, there is no duty to defend...."' (Fire Insurance Exchange v. Abbott (1988) 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620.) Gray and its progeny have made it clear that the determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (Gray, supra, 65 Cal.2d at p. 276, 54 Cal. Rptr. 104, 419 P.2d 168; La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1994) 9 Cal.4th 27, 44, 36 Cal.Rptr.2d 100, 884 P.2d 1048 [test is whether underlying action for which defense is sought potentially seeks relief within policy terms].)"[8]
"[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law."[9] On the other hand, an insurer owes no duty of defense when "`the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' [Citation.]"[10]
*365 Whether an insurer must indemnify an insured in a given third party action is an entirely different question. That duty requires a determination of actual coverage.[11] In some instances this duty may not be entirely clear until after trial of the underlying matter. For this reason an insurer has a duty to defend whenever the insurer ascertains facts which give rise to the possibility of coverage.[12]

III. ALLEGATIONS OF THE COMPLAINT ASSERTING AN ASAULT AND BATTERY AND FACTS EXTRINSIC TO THE COMPLAINT INDICATING MITCHELL ACTED IN SELF-DEFENSE RAISED THE POSSIBILITY OF COVERAGE UNDER THE POLICY.
The parties agree the issue in this appeal is whether the conduct giving rise to the injuries alleged in the third party suit constituted an "accident"a term not defined in the policyso as to fall within the coverage provision of the policy. The parties further agree common law construction of the term "accident" is part of the policy as a matter of law.[13] Where the parties disagree is whether under existing case law allegedly intentional conduct in self-defense is nevertheless deemed to be an "accident" within the coverage provision of the policy because provoked by the unexpected and unintended acts of the third party. We conclude it can.
Any discussion of the matter must begin with the Supreme Court's seminal decision in Gray v. Zurich Insurance Co.[14] The issue before the Supreme Court in Gray was whether the insurer had a duty to defend its insured in a third party action alleging the insured had committed an assault. The complaint in the underlying action alleged the insured had "`wilfully, maliciously, brutally and intentionally assaulted'" the victim. The insured notified the insurer of the suit. The insured claimed he had acted in self-defense and requested the insurer to undertake his representation in the matter. The policy at issue excluded coverage for bodily injury "`caused intentionally by or at the direction of the insured.'" The insurer refused to defend on the ground the complaint alleged an intentional tort which fell outside the coverage of the insured's policy.[15]
The Gray court disagreed an insurer could properly determine its contractual obligations by simple reference to the allegations of a complaint. "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy...."[16] The court concluded the allegations *366 of the complaint plus the information, received from the insured regarding his claim of self-defense provided the insurer sufficient facts to trigger its duty to defend the underlying lawsuit. "Jones' complaint clearly presented the possibility that he might obtain damages that were covered by the indemnity provisions of the policy. Even conduct that is traditionally classified as `intentional' or `wilful' has been held to fall within indemnification coverage. Moreover, despite Jones' pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, plaintiff might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct. Thus, even accepting the insurer's premise that it had no obligation to defend actions seeking damages not within the indemnification coverage, we find, upon proper measurement of the third party action against the insurer's liability to indemnify, it should have defended because the loss could have fallen within that liability."[17]
Lowell v. Maryland Casualty Co.[18] also involved a third party suit for assault and battery. The complaint in the underlying suit alleged the insured did "`unlawfully and maliciously assault, beat, strike and batter plaintiff, [ ] about the back, arms, head and body with great violence and without cause or provocation.'" The insured tendered defense of the suit to his insurer. The policy covered damages for bodily injury claims "`caused by accident.'" Under the policy assault and battery were deemed to be "accidents" "`unless committed by or at the direction of the insured.'" The insurer refused to defend, concluding the allegations of the complaint alleged facts outside the policy's coverage.[19]
The Supreme Court held the facts gave rise to the potential for coverage and thus a duty to defend: "[W]e note that the Gonzales action presented the potential of liability under the policy; the insurer could not justify its refusal to defend upon the ground that the bare pleadings asserted an assault and battery and therefore precluded indemnification coverage. In an action for assault and battery a probable or possible issue of self-defense may always arise. As we have explained in Gray, even if the insured's conduct may traditionally be classified as an `intentional' or `wilful' tort, many cases have held that such conduct falls within the indemnification coverage...."[20]
*367 Following Gray and its progeny, the Court of Appeal in Mullen v. Glens Falls Insurance Co.[21] held a third party lawsuit alleging an intentional assault and battery raised the potential for coverage under an insuring clause covering "accidents" nearly identical to the clause in the case at bar. In Mullen the insureds' son allegedly got into a fight with a gas station attendant and struck the attendant with a tire iron. The gas station attendant brought suit against the insureds and their son alleging claims for negligence and the intentional torts of assault and battery. The policy stated coverage applied to damages as a result of bodily injury caused by an "occurrence." An "occurrence," as in the present case, was defined as "`an accident ... neither expected nor intended from the standpoint of the insured.'" Glens Falls denied a defense based on the allegations of the complaint alleging intentional conduct and the insurer's erroneous belief the underlying suit involved use of an automobile. A second insurer assumed responsibility for the insureds' defense and filed an answer alleging the insureds' son had acted in self-defense.[22]
In a later coverage action against Glens Falls the Court of Appeal held the underlying suit raised the potential for coverage and thus the insurer had breached its duty to defend. "[W]hen Glens Falls denied [the insureds' son] a defense it had information in its possession which showed that the operation and use of an automobile had no causal connection with plaintiffs injuries [citations] and that the alleged injuries were the result of a fight; for all the insurance company could have known at that time, plaintiff started the fight and was struck by [the insureds' son] in self-defense. It is now settled that injuries resulting from acts committed by an insured in self-defense are not `intended' or `expected' within the meaning of those terms as customarily used in an exclusionary clause like the one involved in the present case. [Citations.]"[23]
The Mullen court explained when a policy excludes from coverage injuries which are "expected" or "intended" courts construe this policy language merely to exclude from coverage injuries and damage "resulting from acts involving an element of wrongfulness or misconduct, even though the acts otherwise are performed intentionally."[24]
The decision in Walters v. American Insurance Co.[25] is another decision involving an assault and battery where the insured agreed he had struck the plaintiff intentionally in self-defense. The insurer, as in this case, contended the self-defense motive was irrelevant because the insured's intentional act of striking the third party was sufficient to exclude coverage. The Walters court disagreed. It found the insured's motive of self-defense was in fact relevant to the question whether he acted wrongfully in the first instance. The court construed the phrase "willful act" in Insurance Code section 533 prohibiting an insurer from indemnifying an insured for "wrongful acts," as meaning something more blameworthy than ordinary negligence, and more than just an act performed intentionally. "If plaintiff acted in *368 self-defense then although he `intended the act,' plaintiff acted by chance and without a preconceived design to inflict injury.... [A]n element of wongfulness or misconduct is connoted by an exclusion provision drafted as in the present case. Such a construction would also be consonant with the public policy provision in section 533 of the Insurance Code. [¶] Acts committed in self-defense are not unlawful."[26]
Respondents attempt to distinguish these decisions by pointing out other case law definitions of the term "accident" in insurance policies do not encompass deliberate and intentional acts. Respondents rely primarily on the definitions provided in the decisions in Collin, Mendez and Quan. In each of these cases the insuring clause covered an "occurrence" defined as an "accident," and each policy excluded from coverage bodily injury "expected or intended by the insured." In Collin v. American Empire Ins. Co. we defined an "accident" as an "`unexpected, unforeseen, or [an] undesigned happening or consequence from either a known or unknown cause.'"[27] Alternatively, we said in Collin an "accident" is `"something out of the usual course of events ... which happens suddenly and unexpectedly and without design.'"[28] In Merced Mutual Insurance Co. v. Mendez, the court considered, among others, the dictionary definition of "accident," defined as something "`arising from extrinsic causes[;1] occurring unexpectedly or by chancet; or] happening without intent or through carelessness.'"[29] The Quan v. Truck Insurance Exchange court adopted and applied the definitions of "accident" used by the Mendez court.[30]
The decision in Merced Mutual Insurance Co. v. Mendez,[31] on which respondents primarily rely, involved intentional and inherently wrongful acts, and is distinguishable on that ground alone. In Mendez a third party complaint alleged acts of forcible oral copulation and/or assault with the intent to commit forcible oral copulation. The insured admitted the sex acts but claimed they had been consensual. The court found the insured's intent not to cause injury was immaterial because he *369 intended to, and did, commit the intentional actsunprompted and unprovoked by any outside force. Given the insured's acts involved inherently harmful and illegal conduct,[32] the court further found his unilateral acts were not "accidents" for purposes of coverage under the policy.[33]
The Mendez court rejected the notion it was enough for the injury to have been unintended to be deemed an "accident" within the meaning of the insuring clause. "In terms of fortuity and/or foreseeability, both `the means as well as the result must be unforeseen, involuntary, unexpected and unusual' (Unigard Mut. Ins. Co. v. Argonaut Ins. Co. (1978) 20 Wash.App. 261, 579 P.2d 1015, ...) We agree coverage is not always precluded merely because the insured acted intentionally and the victim was injured. An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. (Ibid.) Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident. Moreover, where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an `accident' merely because the insured did not intend to cause injury. Conversely, an `accident' exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity."[34]
Quan v. Truck Insurance Exchange[35] is distinguishable on the same ground as it too involved a third party's suit based on the insured's inherently wrongful acts of sexual assault and rape. Because the sexual assault was deliberate, the Quan court concluded there was no "accident" within the meaning of the policy and thus no coverage. The court rejected the insured's argument he had made a mistake and had acted negligently, rather than intentionally. "`Negligent' or not, in this case the insured's conduct alleged to have given rise to claimant's injuries is necessarily nonaccidental, not because any `harm' was intended, but simply because the conduct could not be engaged in by `accident.'"[36] The court also noted there were no facts to suggest a possible intervening force or other theory which could create coverage under the policy. "In this case, there is no theory available on the facts expressed in the complaint or made known to the insurer from other sources under which the insured can be liable for physical injuries caused by `accidentally' touching, kissing, embracing or having sex with the claimant, nor is there any additional `happening' to combine with these necessarily deliberate acts so as to produce an `accident' giving rise to bodily injury. There is thus no potential liability for `bodily injury' caused by an `occurrence' and no duty to defend."[37]
*370 We find the definitions provided in these decisions do not foreclose the possibility acts in self-defense can be an "accident" and thus fall within the coverage provision of the policy. In construing the word "accident" in insurance policies these courts' definitions support the finding acts in self-defense can be an "accident" where the third party's actions provoking the self-defense response were the unforeseen and unexpected element in the causal chain of events making the insured's acts in self-defense unplanned and involuntary. Under these courts' definitions, it is the unexpectedness of the third party's actions which creates the "accident" within the meaning of the coverage clause.
In other words, in assault and battery cases the third party's actions prompting an insured to act in self-defense are part of the causal chain of events leading to potential injury.[38] In the usual case the third party's actions which prompt the need to protect self or others will be the unintended, unexpected, unplanned and unforeseen event constituting the "accident."[39]
Thus, as Gray teaches, in an assault and battery case, an insurer must take a broad view of any incident raising the question of self-defense when determining whether there has been an unexpected and unintended forceor "happening"in the causal chain of events creating the "accident."[40] It is not enough to parse out each party's actions and analyze them separately to determine whether an unexpected and unforeseen incident occurred. The provoking party's actions are an integral part of the overall incident. The insured's response in self-defense often will be intentional when the insured fears serious bodily harm or death. Other times the insured could be acting purely reflexively in responding to the third party's real or perceived threat. In this sense the insured's acts in self-defense are involuntary, not wrongful, and triggered by the unexpected and unforeseen threat presented by the provoking third party.
Thus properly viewed, even deliberate acts of self-defense in response to unexpected, unforeseen and unintended events by the third party are "accidents" and give rise to the potential for liability under the policy, and hence the obligation to provide a defense.[41] This approach in no way discredits the principle an insured's subjective intent not to cause harm or injury is irrelevant to the determination whether acts in self-defense are potentially "accidents" within the meaning of the insuring clause. Only the acts themselves need be considered in determining whether a case involving assault and battery and a claim of self-defense raises the possibility of coverage, and thus the duty to defend.
As noted, in determining whether a duty to defend exists "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."[42] Jafari has satisfied his initial burden of showing the potential for coverage based on the facts known to the *371 insurer, that is, Nazemzadeh's verbal assault and threat and Mitchell's acts of self-defense in response. Whether Mitchell actually acted in self-defense, or used only reasonable force, were disputed factual questions which could not properly be resolved on a motion for summary judgment.[43] This is especially true where the record does not demonstrate respondents had any undisputed extrinsic facts which had the effect of eliminating the potential for coverage.[44] For this reason, respondents could not disprove Mitchell's claim of self-defense on summary judgment.[45] It was thus error for the trial court to attempt to resolve the factual questions in this case by adopting respondents' erroneous argument and deciding as a matter of law deliberate acts in self-defense can never be an "accident" within the meaning of the insuring clause.[46]
Because the factual question whether Mitchell acted reasonably in self-defense could not be resolved in this summary proceeding we find the trial court erred in granting respondents' motion for summary judgment.[47]

DISPOSITION
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion. Jafari is awarded his costs on appeal.
We concur: WOODS and ZELON, JJ.
NOTES
[1] Italics added.
[2] In his opposition and again at the hearing on the motion Jafari objected to the police report as hearsay. Although his objections were discussed at the hearing the trial court failed to make a ruling. When a party makes objections to evidence submitted as part of a summary judgment motion, but does not obtain a court ruling on the objections, we consider the objections as waived, and view the evidence as having been admitted. (See Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 670, fn. 1, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
[3] Respondents objected to Mitchell's declaration on numerous grounds. The trial court did not rule on respondents' objections. As previously stated, we will thus view the evidence as having been admitted. (See Ann M. v. Pacific Plaza Shopping Center, supra, 6 Cal.4th 666, 670, fn. 1, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
[4] Code of Civil Procedure section 437c, subdivision (c).
[5] Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 476, 110 Cal.Rptr.2d 370, 28 P.3d 116.
[6] Code of Civil Procedure section 437c, subdivision (p)(2).
[7] McIntosh v. Mills (2004) 121 Cal.App.4th 333, 338, 17 Cal.Rptr.3d 66.
[8] Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.
[9] Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.
[10] Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153, quoting Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 276, footnote 15, 54 Cal.Rptr. 104, 419 P.2d 168.
[11] Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 659, footnote 9, 42 Cal.Rptr.2d 324, 913 P.2d 878.
[12] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 276, 54 Cal.Rptr. 104, 419 P.2d 168.
[13] Collin v. American Empire Ins. Co. (1994) 21 Cal.App.4th 787, 810, 26 Cal.Rptr.2d 391.
[14] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168.
[15] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 267, 54 Cal.Rptr. 104, 419 P.2d 168.
[16] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 276-277, 54 Cal.Rptr. 104, 419 P.2d 168.
[17] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 277, 54 Cal.Rptr. 104, 419 P.2d 168, italics added.
[18] Lowell v. Maryland Cos. Co. (1966) 65 Cal.2d 298, 54 Cal.Rptr. 116, 419 P.2d 180.
[19] Lowell v. Maryland Cos. Co., supra, 65 Cal.2d 298, 299-301, 54 Cal.Rptr. 116, 419 P.2d 180.
[20] Lowell v. Maryland Cos. Co., supra, 65 Cal.2d 298, 301, 54 Cal.Rptr. 116, 419 P.2d 180.

Respondents dismiss these Supreme Court decisions as "outdated," although the Supreme Court itself continues to rely on the Gray decision and its progeny. (See, e.g., Waller v. Truck Insurance Exchange, supra, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619; Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th 287, 300, 24 Cal. Rptr.2d 467, 861 P.2d 1153.) Thus, until or unless the Supreme Court itself disavows these earlier decisions the principles they espouse remain the law of the state of California. As an intermediate appellate court, we are bound to follow the decisions of this state's highest court. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)
[21] Mullen v. Glens Falls Ins. Co. (1977) 73 Cal.App.3d 163, 140 Cal.Rptr. 605.
[22] Mullen v. Glens Falls Ins. Co., supra, 73 Cal.App.3d 163, 165-168, 140 Cal.Rptr. 605.
[23] Mullen v. Glens Falls Ins. Co., supra, 73 Cal.App.3d 163, 170, 140 Cal.Rptr. 605.
[24] Mullen v. Glens Falls Ins. Co., supra, 73 Cal.App.3d 163, 171, 140 Cal.Rptr. 605.
[25] Walters v. American Ins. Co. (1960) 185 Cal.App.2d 776, 8 Cal.Rptr. 665.
[26] Walters v. American Ins. Co., supra, 185 Cal.App.2d 776, 783, 8 Cal.Rptr. 665; see also, David Kleis, Inc. v. Superior Court (1995) 37 Cal.App.4th 1035, 1048, 44 Cal.Rptr.2d 181 ["Gray clearly places the focus upon the mental state of the insured when undertaking a course of conduct. If the insured mistakenly believed that he had a right to defend himself, or was mistaken with regard to the extent with which lie could use force, the act would not be intentional and coverage would exist."]; Grain Dealers Mutual Ins. Co. v. Marino (1988) 200 Cal.App.3d 1083, 1088, 246 Cal.Rptr. 410 [although an insured intended the act in self-defense he acted by chance and without a preconceived design to inflict injury].
[27] Collin v. American Empire Ins. Co., supra, 21 Cal.App.4th 787, 810, 26 Cal.Rptr.2d 391, quoting Hogan v. Midland National Ins. Co. (1970) 3 Cal.3d 553, 559, 91 Cal.Rptr. 153, 476 P.2d 825.
[28] Collin v. American Empire Ins. Co., supra, 21 Cal.App.4th 787, 810, 26 Cal.Rptr.2d 391, quoting State Farm Fire & Casualty Co. v. Drasin (1984) 152 Cal.App.3d 864, 867, 199 Cal.Rptr. 749. Our decision in Collin is not on point either factual or procedurally. Collin concerned enforcement of a judgment. Also the procedural posture of Collin was after a trial on stipulated facts. Thus, and unlike the present case, the trial court and the appellate court in Collin were both in a position to resolve the merits of the parties' respective positions.
[29] Merced Mutual Ins. Co. v. Mendez. (1989) 213 Cal.App.3d 41, 48, 261 Cal.Rptr. 273, quoting, Webster's Ninth New Collegiate Dictionary (1983) page 49.
[30] Quan v. Truck Ins. Exchange (1998) 67 Cal.App.4th 583, 600, 79 Cal.Rptr.2d 134.
[31] Merced Mutual Ins. Co. v. Mendez, supra, 213 Cal.App3d 41, 261 Cal.Rptr. 273.
[32] See J.C. Penney Casualty Ins. Co. v. M.K. (1991) 52 Cal.3d 1009, 1025, 278 Cal.Rptr. 64, 804 P.2d 689 [acts of child molestation are intentional, illegal, inherently harmful and accordingly fall outside coverage].
[33] Merced Mutual Ins. Co. v. Mendez, supra, 213 Cal.App.3d 41, 52, 261 Cal.Rptr. 273 ["We further are unable to posit any factual construction where such conduct might be interpreted as accidentally occurring."].
[34] Merced Mutual Ins. Co. v. Mendez, supra, 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273, italics added.
[35] Quan v. Truck Ins. Exchange, supra, 67 Cal.App.4th 583, 79 Cal.Rptr.2d 134.
[36] Quan v. Truck Ins. Exchange, supra, 67 Cal.App.4th 583, 596, 79 Cal.Rptr.2d 134.
[37] Quan v. Truck Ins. Exchange, supra, 67 Cal.App.4th 583, 600-601, 79 Cal.Rptr.2d 134, italics added.
[38] Merced Mutual Ins. Co. v. Mendez, supra, 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273.
[39] This interpretation is also consistent with the exception to the exclusion clause stating the insurance policy covers "`bodily injury' resulting from the use of reasonable force to protect persons or property." (Section II, Exclusions B, subsection 1.)
[40] Quan v. Truck Ins. Exchange, supra, 67 Cal.App.4th 583, 601, 79 Cal.Rptr.2d 134.
[41] Gray v. Zurich Ins. Co., supra, 65 Cal.2d 263, 275, 277, 54 Cal.Rptr. 104, 419 P.2d 168.
[42] Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.
[43] Compare Collin v. American Empire Ins. Co., supra, 21 Cal.App.4th 787, 26 Cal.Rptr.2d 391 [both the trial court and the appellate court could determine the ultimate question of coverage because the case was tried on stipulated facts].
[44] Waller v. Truck Ins. Exchange, supra, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 ["Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability."].
[45] Code of Civil Procedure section 437c, subdivision (c) [summary judgment is proper only where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law]; Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 [when the facts relating to coverage are in dispute, the potential for coverage arises and exists until the factual dispute is conclusively resolved].
[46] Grain Dealers Mutual Ins. Co. v. Marino, supra, 200 Cal.App.3d 1083, 1088, 246 Cal. Rptr. 410 [trial court erred in deciding the insured's acts in self-defense were willful and intentional "by resolving the conflict in the facts given him, because it is not the function of a summary proceeding to decide issues of fact; instead, the inquiry is whether issues of fact exist to be tried."].
[47] Jafari's claim for breach of the implied covenant of good faith and fair dealing is necessarily derivative of his claim for breach of the duty to defend. Where, as here, there is a potential for coverage under the policy, and hence a duty to defend, an insured can state a cause of action for breach of the implied covenant of good faith and fair dealing where the insurer's denial of coverage was unreasonable or without proper cause. (Jordan v. Allstate Ins. Co. (2007) 148 Cal.App.4th 1062. 1072, 56 Cal.Rptr.3d 312.) The reasonableness of an insurer's claims handling conduct is generally a question of factrarely if ever capable of resolution on summary judgment. (Id. at pp. 1076-1077, 56 Cal.Rptr.3d 312; Amadeo v. Principal Mut. Life Ins. Co. (9th Cir.2002) 290 F.3d 1152, 1161.)

Also, and in light of our resolution of this appeal, we need not address Jafari's additional procedural arguments attacking the propriety of the summary judgment.