2009 Ark. App. 693

Cleo WATKINS Jr., and Brenda Watkins, Appellants

v.

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY and Farm Bureau Mutual Insurance Company of Arkansas, Inc., Appellees.

No. CA 09–120.

Court of Appeals of Arkansas.

Oct. 21, 2009.

Womack, Landis, Phelps & McNeill, P.A., by: J.V. Phelps and Mark Mayfield, Jonesboro, for appellants.

Watts, Donovan & Tilley, P.A., by: Richard N. Watts and David M. Donovan, Little Rock, for appellees.

COURTNEY HUDSON HENRY, Judge.

Appellants Brenda and Cleo Watkins appeal from the Pulaski County Circuit Court's entry of summary judgment in favor of appellees Southern Farm Bureau Casualty Insurance Company and Farm Bureau Mutual Insurance Company of Arkansas, Inc. (collectively "Farm Bureau"). For reversal, appellants contend that the trial court erred in ruling as a matter of law that Farm Bureau owed no duty to defend or to provide coverage to Cleo Watkins in connection with a lawsuit brought against him for assault and battery. Appellants further argue that the trial court erred in concluding that they had not pled

sufficient facts to proceed on their claim of bad faith.[1] The issues in this case center on an "intentional-design" exclusion in a general-liability insurance policy and the question of whether the exclusion applies when the insured asserts self-defense to claims of assault and battery. We affirm the order of summary judgment on the issues of coverage and bad faith, but we reverse on the issue of Farm Bureau's duty to defend Watkins in the underlying lawsuit.

The record reveals that, on June 7, 2006, Watkins and Scotty Joe Turner became embroiled in a physical altercation after Turner accused Watkins of causing damage to Turner's rice crop. On July 18, 2006, Turner sued Watkins seeking compensatory and punitive damages for assault and battery. Specifically, Turner alleged that Watkins beat him with Turner's pistol during the confrontation.

Watkins owned both a homeowner's insurance policy and a general-liability policy issued by Farm Bureau. Upon being served with Turner's complaint, Watkins visited Thom Beasley, Farm Bureau's local agency manager. Beasley advised Watkins to consult attorney Benton Smith of the firm Cahoon and Smith in Jonesboro. Smith and his firm had provided legal representation to Farm Bureau in the past and were actively representing Farm Bureau in other litigation at the time of the referral. On July 28, 2006, Richie Burgin, an adjuster for Farm Bureau, interviewed Watkins about the incident. Burgin asked Watkins to describe the altercation and inquired if Watkins intended to harm Turner when he struck him. Appellant replied,

Mr. Turner drove up in his pickup, jumped out, and said get your [expletive] equipment off my property. I said let's get in your truck and talk. He pulled a semi-automatic pistol. I felt threatened. I called him an [expletive]. He then put the pistol back in its holster.

He was accusing me of damaging his crop. He was gonna show me where the damage was when I called him an unpleasant name. He put his hand back on the gun. I knocked his hand off and got the gun.

He was gonna jump me so I just hit him with it. He wanted to come back at me again, so I hit him again. I was wanting to get his attention because I was wanting him to, I, I, you know, out of fear, uh—not to cause him any harm but to stop the altercation. He said do not hit me with that loaded gun. He wanted to fight back until, uh, next thing I knowed he was getting in his truck. He tried to hit me. It is correct that I intentionally hit him to try to stop the altercation. I struck him once in the head and once in the arm. I did not want an altercation with Mr. Turner. I felt like I was defending myself, because he did have a gun.

Macey Harpole, Farm Bureau's claims manager, communicated with Smith regarding coverage in view of the "intentional-acts" exclusion found in the homeowner's policy and the "intentional-design" exclusion contained in the general liability policy. Harpole advised Smith that Farm Bureau would file a declaratory-judgment action, and in exchange for not filing suit, Harpole asked Smith for a letter stating that Farm Bureau did not owe Watkins a defense and had no obligation to provide coverage. Harpole and Smith had other discussions regarding coverage, and on October 3, 2006, Smith wrote Farm Bureau a letter stating that Watkins agreed and understood that his policies did not create a

<hr/>

1. From this point forward, we will refer to appellants solely as "Watkins."

duty to defend and did not afford him coverage for intentional acts.

Smith represented Watkins at the trial on Turner's complaint, and the trial court in that action instructed the jury on Turner's assault and battery claims and on Watkins's defense of justification. The jury returned a verdict for Turner and awarded him $500,000 in compensatory damages and $700,000 in punitive damages. Watkins and Turner later settled the judgment for $1,000,000.

Thereafter, Watkins filed a malpractice claim against Smith. Farm Bureau subsequently filed this action seeking a declaratory judgment that it did not have a duty to defend or provide coverage on behalf of Watkins in connection with Turner's lawsuit. Watkins counterclaimed for coverage and for the attorney's fees he incurred in defending Turner's allegations, and he also presented a claim of bad faith against Farm Bureau. Farm Bureau moved for summary judgment on the grounds that both policies excluded coverage for intentional acts and that collateral estoppel prevented Watkins from relitigating the claim of self-defense that the jury rejected in the Turner lawsuit. Farm Bureau also maintained that Watkins had not sufficiently stated a claim for bad faith.

Watkins responded that collateral estoppel did not preclude his claims that Farm Bureau owed a duty to defend and to provide coverage and that questions of fact remained as to coverage and his allegations of bad faith. He also moved for partial summary judgment on the duty to defend. In support of these contentions, Watkins filed the affidavit of Jerry Ramsey, a law professor at the University of Montana. Ramsey opined that, based on a conflict of interest, attorney Smith had failed to ask Watkins at the trial whether he had intended to do harm to Turner, and Ramsey expressed the view that Farm Bureau had a duty to defend Watkins under both policies. The professor was also critical of Farm Bureau for not having manuals or guidelines to explain coverage and the duty to defend. Ramsey stated his belief that Farm Bureau's conduct was "dishonest, oppressive, and malicious."

Watkins also presented his own affidavit and supplemental affidavit recounting the sequence of events and the substance of his dealings with Farm Bureau representatives. He stated that Farm Bureau never advised him of attorney Smith's conflict of interest and that he did not tell Smith to release Farm Bureau from its obligations under either policy. In addition, Watkins submitted a "Claim Department Lawsuit Worksheet" noting that Turner's "complaint [has] been delivered to our attorney," Benton Smith.

After a hearing on the dueling motions for summary judgment, the trial court declared that neither policy afforded coverage or obligated Farm Bureau to provide a defense to Turner's cause of action. The trial court also ruled that Watkins failed to state a claim for bad faith. Watkins brings this appeal from the trial court's order of summary judgment.[2]

On appeal, Watkins focuses his arguments entirely on the exclusion found in the general liability policy. This policy excludes coverage for compensatory damages arising out of an act "by any insured that is intentionally designed to do harm to others." On appeal, Watkins argues that the trial court erred in concluding (1) that Farm Bureau had no duty to defend; (2) that it had no obligation to provide coverage; and (3) that Farm Bureau was entitled to judgment as a matter of law on the

2. Farm Bureau also named Turner as a defendant in this case. On Farm Bureau's motion, the trial court dismissed Turner from the litigation.

claim of bad faith. Because this case comes to us from an order of summary judgment, we apply our familiar standards of review in deciding these questions.

■ Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Gonzales v. City of DeWitt*, 357 Ark. 10, 159 S.W.3d 298 (2004). On appellate review, we must determine whether summary judgment was proper based on whether the evidence presented by the moving party left a material fact unanswered. *Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006). This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878, *cert. denied*, 537 U.S. 1003, 123 S.Ct. 509, 154 L.Ed.2d 400 (2002). Where there are no disputed material facts, our review must focus on the trial court's application of the law to those undisputed facts. *Parker v. S. Farm Bureau Cas. Ins. Co.*, 104 Ark. App. 301, 292 S.W.3d 311 (2009). When the facts are not at issue but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

### Duty to defend

Watkins argues that the intentional-design exclusion does not absolve Farm Bureau of its obligation to defend him in the Turner lawsuit because he asserted that he acted in self-defense. Watkins points out that Farm Bureau knew that he was claiming self defense from the interview with the claims adjuster that took place soon after the lawsuit was filed, wherein Watkins stated that he acted "not to cause [Turner] any harm but to stop the altercation."

■ Our supreme court has been clear that an insurance company's duty to defend is broader than its duty to indemnify. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 61 S.W.3d 807 (2001). The duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. *Id.* The general rule is that the allegations of the complaint determine the insurer's duty to defend. *Id.* However, the supreme court has observed that there are occasions where an insurance company's duty to defend cannot be determined solely from the allegations of the complaint. *Commercial Union Ins. Co. of Am. v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977). Situations involving claims of self-defense in response to allegations of assault and battery fall within this category of cases, because plaintiffs cannot be expected to allege in the complaint that they were assaulted by the insured while the insured was protecting life or property. *Smith v. St. Paul Guardian Ins. Co.*, 622 F.Supp. 867 (W.D.Ark.1985).

We are cognizant that our supreme court has held that an insurer had no duty to defend its insured against claims of assault and battery based on an exclusion that denied coverage for "assault and battery ... committed by or at the direction of the insured." *Fisher v. Travelers Indem. Co.*, 240 Ark. 273, 275, 398 S.W.2d 892, 893 (1966). However, unlike the case before us, the insured in *Fisher* did not claim that he acted in self-defense. More recently, in *Parker, supra*, we addressed an insurer's duty to defend in similar circumstances and under an exclusion identical to the one in the case at bar. There,

the insured was on his property shooting dogs that belonged to the Parkers. Mr. Parker fired a shot at the insured, and the insured returned fire, killing Mr. Parker. The bullet that struck Mr. Parker passed through his body and hit Mrs. Parker, who sued the insured for her injuries. The trial court granted summary judgment to the insurer based on the intentional-design exclusion. We reversed based in part on the following analysis:

> Moreover, we believe that viewing the evidence in the light most favorable to Mrs. Parker, it could be reasonably concluded that [the insured] acted intentionally to shoot in self defense, but not necessarily with the design to do harm. Thus, there is some question on whether the facts fit within "an act ... intentionally designed to do harm to others."

*Id.* at 307, 292 S.W.3d at 316. Thus, we ruled that the intentional-design exclusion did not apply if the insured acted in self defense.

■ By the decision in *Parker,* we aligned ourselves with a majority of jurisdictions which hold that intentional-act exclusions do not relieve an insurer of its duty to defend when the insured causes injury while acting in self-defense. *Safeco Ins. Co. of Am. v. Tunkle,* 997 F.Supp. 1356 (D.Mont.1998); *State Farm Fire & Cas. Co. v. Poomaihealani,* 667 F.Supp. 705 (D.Haw.1987); *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984); *Jafari v. EMC Ins. Cos.,* 155 Cal.App.4th 885, 66 Cal.Rptr.3d 359, *cert. granted,* 172 P.3d 401, 69 Cal.Rptr.3d 95 (2007); *Vt. Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 966 A.2d 672 (2009); *Deakyne v. Selective Ins. Co. of Am.,* 728 A.2d 569 (Del.Super.Ct.1997); *W. Fire Ins. Co.*

*v. Persons,* 393 N.W.2d 234 (Minn.App. 1986); *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981); *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St.3d 78, 491 N.E.2d 688 (1986); *Vt. Mut. Ins. Co. v. Singleton,* 316 S.C. 5, 446 S.E.2d 417 (1994); *Stoebner v. S.D. Farm Bureau Mut. Ins. Co.,* 598 N.W.2d 557 (S.D.1999); *Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook,* 210 W.Va. 394, 557 S.E.2d 801 (2001); *Berg v. Fall,* 138 Wis.2d 115, 405 N.W.2d 701 (Wis.Ct.App.1987), *overruled on other grounds, Sustache v. Am. Family Mut. Ins. Co.,* 303 Wis.2d 714, 735 N.W.2d 186 (App.2007).[3] Generally, these courts reason that the primary intent of an insured who acts in self defense is to prevent harm to himself, not to cause injury to another. *Walukiewicz, supra; Cook, supra.* Further, courts stress that persons who act in self defense do so instinctively and reactively, without deliberation, in response to provocation by another person. *Walukiewicz, supra.* Consideration is also given to the reasons underlying the insurance industry's adoption of intentional-act exclusions, which is that premiums are based upon the random occurrence of particular insured events. *Cook, supra.* If a policyholder can consciously and deliberately control the occurrence of these events through the commission of intentional acts, the liability of the insurance company becomes impossible to define. *Id.* Therefore, the exclusion prevents individuals from purchasing insurance as a shield for their anticipated intentional misconduct. *Thompson, supra.* However, a legitimate act of self-defense is neither anticipated nor wrongful, and the risk that an insurance company bears for an insured who acts in self-defense is calculable

---

**3.** A minority of courts take an opposing view on the question. Cases expressing both viewpoints are collected in James L. Rigelhaupt, Jr., Annotation, *Acts in Self–Defense as Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured,* 34 A.L.R.4th 761 (1984).

and also minimal from a monetary standpoint. *Id.*

 Farm Bureau argues, however, that Watkins's reliance on self-defense is foreclosed by the jury's verdict in the Turner lawsuit. We cannot accept this argument. As stated, the duty to defend is much broader than the duty to indemnify, and it exists if there is a possibility of coverage. *Murphy Oil, supra.* Clearly, the duty to defend is triggered by the nature of the claims stated by the parties in their pleadings and not by an assessment of which party will or ultimately did prevail. *Walukiewicz, supra; Cook, supra; see also Henshall, supra* (recognizing that a duty to defend existed while the question of coverage under an exclusion would be decided at the trial of the underlying tort claim). Common sense also dictates that the duty to defend must be gauged in light of the circumstances that exist before the underlying case is tried.

Here, Watkins informed Farm Bureau early of his claim that he acted in self defense. Because the duty to defend is broad and there existed the possibility that injury or damage may fall within the policy coverage, Farm Bureau was obliged to defend Watkins in the Turner lawsuit. The trial court thus erred in concluding as a matter of law that Farm Bureau did not have a duty to defend. Therefore, we reverse and remand for the trial court to award an appropriate attorney's fee for Watkins's defense of that suit.

### ⌊11⌋*Coverage*

 Watkins next argues that the trial court erred by granting summary judgment on the coverage issue because a question of fact remains as to whether he acted in self defense. In response, Farm Bureau maintains its argument that Watkins's claim for coverage is barred by collateral estoppel based on the jury's verdict

that Watkins's actions were not justified. We must agree that collateral estoppel applies to the issue of coverage.

 The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of issues of law or fact actually litigated by the parties in the first suit, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co. of Ark.,* 371 Ark. 229, 264 S.W.3d 485 (2007). The following elements must be present in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment. *Id.*

 In this case, it is Farm Bureau, the plaintiff, who is asserting collateral estoppel to foreclose Watkins, the defendant, from litigating an issue that Watkins previously litigated unsuccessfully in the Turner lawsuit. This is referred to as the offensive use of collateral estoppel. *Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.,* 356 Ark. 90, 146 S.W.3d 852 (2004). The supreme court has noted that the offensive use of collateral estoppel is more controversial ⌊12⌋than its traditional defensive use, but the court has held that it should be available in limited circumstances. *Bradley, supra.* A trial court has broad discretion to determine if it should be applied. *Riverdale, supra.* A trial court should not allow the application of offensive collateral estoppel if it would be unfair to the defendant. *Johnson v. Union Pac. R.R.,* 352 Ark. 534, 104 S.W.3d 745 (2003). The offensive use of collateral estoppel may be unfair (1)

where the defendant in the first action is sued for nominal damages and thus may not have had great incentive to defend vigorously; (2) where the judgment relied upon as a basis for collateral estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; and (3) where the second action affords the defendant procedural opportunities unavailable in the first action that could cause a different result. *Id.*

The elements of collateral estoppel are present in this case, and Watkins had a full and fair opportunity to present his claim of self-defense in the underlying jury trial. The jury, however, found that he was the aggressor or that his actions were not otherwise justified. Because appellant had his day in court, we perceive no unfairness to Watkins arising from the application of collateral estoppel. Accordingly, we affirm the trial court's grant of summary judgment on this issue.

### Bad faith

As his final point, Watkins asserts that his bad-faith claim should have gone to trial. He contends that Farm Bureau acted in bad faith when Harpole threatened to file a declaratory-judgment action unless Smith wrote a letter stating that there was no coverage or a duty to defend. Watkins also contends that Harpole's communications with Smith constituted a conflict of interest according to the Arkansas Rules of Professional Conduct because Smith and his firm represented Farm Bureau in other litigation. As further evidence of bad faith, Watkins refers to Farm Bureau's failure to separate its investigation of claims from issues of coverage and its lack of policy manuals explaining how coverage issues are to be handled.

The supreme court has defined "bad faith" as dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured, carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *State Auto Prop. & Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999). The tort of bad faith does not, however, arise from a mere denial of a claim; there must be affirmative misconduct. *Selmon v. Metro. Life Ins. Co.,* 372 Ark. 420, 277 S.W.3d 196 (2008). Mere negligence or bad judgment is insufficient as long as the insurer is otherwise acting in good faith. *Id.*

The supreme court has held that nightmarish red tape, an abrupt attitude of an insurance representative about higher premium costs following cancellation, and confusion over the referral process did not amount to bad faith. *Am. Health Care Providers v. O'Brien,* 318 Ark. 438, 886 S.W.2d 588 (1994). In another case, an insurance company's delay of three months to investigate a claim did not rise to the level of bad faith. *Reynolds v. Shelter Mut. Ins. Co.,* 313 Ark. 145, 852 S.W.2d 799 (1993). The supreme court also found no substantial evidence of bad faith when, among other things, the insurance company refused to pay for certain items because they had been discarded after an adjuster told the insureds that it was permissible to discard them. *State Auto Prop. & Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999).

On the other hand, the supreme court has found bad faith where an insurance agent lied to the insured in stating that there was no coverage. *S. Farm Bureau Cas. Ins. Co. v. Allen,* 326 Ark. 1023, 934 S.W.2d 527 (1996). Bad faith was also found where a claims representative engaged in aggressive, abusive, and coercive conduct, which included the conversion of the insured's vehicle. *Viking Ins. Co. v. Jester,* 310 Ark. 317, 836 S.W.2d 371 (1992). A carrier's intentional alteration of insurance records to avoid a bad risk also

amounted to bad faith in *Employers Equitable Life Ins. Co. v. Williams,* 282 Ark. 29, 665 S.W.2d 873 (1984).

In the case before us, we conclude that the trial court did not err in granting summary judgment to Farm Bureau on the question of bad faith. Turner sued Watkins for assault and battery, and based on the nature of those claims, Farm Bureau took the position that the intentional-design exclusion relieved it of its obligations to Watkins under the policy. Although Watkins claimed self-defense, Farm Bureau's position was not unreasonable, as *Parker, supra,* had not been decided and because there is a split of authority concerning the application of the exclusion when the insured asserts self-defense. Thus, Farm Bureau's communications with Smith do not amount to bad faith because an insurer's refusal to pay a claim cannot constitute wanton or malicious conduct when an actual controversy exists with respect to liability under the policy. *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.,* 366 Ark. 480, 237 S.W.3d 32 (2006). The fact that Farm Bureau also expressed its willingness to file a declaratory-judgment action for a court to resolve this undecided issue does not rise to the level of bad faith either, in that we have recognized that Arkansas statutes clearly provide for the initiation of a declaratory-judgment action against the insured even before the underlying action is resolved. *Parker, supra.* In terms of a conflict of interest, the rules of professional conduct apply to attorneys, not insurers, and it appears to us that the gravamen of Watkins's complaints lies in Smith's actions, whose conduct will be judged in the malpractice suit. We also cannot say that Farm Bureau's purported lack of proper internal procedures can be characterized as affirmative misconduct carried out with hatred, ill will, or a spirit of revenge. For these reasons, we uphold the order of summary judgment on the bad-faith claim.

Affirmed in part; reversed and remanded in part.

GLADWIN and GLOVER, JJ., agree.