[No. H001039. Sixth Dist. Apr. 28, 1988.]

GRAIN DEALERS MUTUAL INSURANCE COMPANY, Plaintiff and Respondent, v.
SALVATORE J. MARINO et al., Defendants and Appellants.

**COUNSEL**

James R. McKittrick, McKittrick, Mock & McGee, Jerry Spolter and Spolter, McDonald & Mannion for Defendants and Appellants.

Nancy M. Battel, P. Mark Ghan, Ronald L. Stefani and Gassett, Perry & Frank for Plaintiff and Respondent.

## OPINION

**BRAUER, J.**—Grain Dealers Mutual Insurance Company (hereinafter designated the Carrier) brought an action against its insured and other named defendants for a declaration that a homeowner's policy it had issued provided no coverage for second degree murder, attempted murder, and false imprisonment committed by its insured. The court below granted summary judgment in favor of the Carrier. We reverse.

## I. BACKGROUND

### A. *Criminal Action*

On October 11, 1977, the Carrier's insured, Salvatore Marino, shot and killed Peter Catelli. He also shot and wounded Orlando Catelli, Peter's father. Then Marino and other defendants put both Catelli bodies in the trunk of a car, drove the car to San Francisco, and there abandoned it. Orlando Catelli survived.

Marino was arrested on October 12, 1977. Charges were filed against Marino and three codefendants. Then came a series of trials and retrials. In the first trial, which began in July of 1980, two codefendants were convicted of various felonies, but the trial judge subsequently granted their motion for a new trial. Marino and the third codefendant were tried in the second trial. The jury acquitted Marino of some of the charges against him, but were unable to reach a verdict as to the other counts. A third trial, with Marino and two codefendants, began in September of 1981. On April 19, 1982, a jury found Marino guilty of second-degree murder, attempted murder, and felony false imprisonment. Marino moved for a new trial on the ground that jurors had engaged in misconduct. The trial judge denied the motion, and on July 22, 1982, Marino was sentenced to a term of nine years in the state prison. Marino appealed his conviction, again claiming that jurors had engaged in misconduct. In an unpublished opinion, the Second Appellate District concluded that while there was evidence of misconduct, Marino had not shown that his right to a fair trial had been compromised. The California Supreme Court denied Marino's petition for a hearing.

Marino then filed a petition for a writ of habeas corpus in a federal district court. That court, adopting the report and recommendation of a United States Magistrate, issued the writ and ordered Marino released from custody unless he were granted a new trial within 60 days. On September 4, 1986, the court granted a stay of judgment pending appeal.

The People appealed to the Ninth Circuit Court of Appeals. On March 9, 1987, that court rendered its opinion in *Marino* v. *Vasquez* (9th Cir. 1987) 812 F.2d 499. The court affirmed the district court's order granting conditional habeas corpus relief as to Marino's convictions for murder and attempted murder, and reversed the grant of habeas relief as to his conviction for false imprisonment. (*Id.,* at p. 507.)

B. *The Catelli Action*

On October 10, 1978, before Marino's first criminal trial, Orlando Catelli and his wife, Rose Catelli, filed an action in superior court (No. 410703) naming Marino and his cohorts as defendants. The complaint alleged seven causes of action, for assault and battery, false imprisonment, intentional infliction of emotional distress, strict liability based upon ultrahazardous activity, negligence, loss of consortium, and for the wrongful death of Peter Catelli. Marino tendered his defense to Carrier. Carrier agreed to defend, but reserved its right to seek an independent determination of its obligation to defend and indemnify Marino. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168]).

C. *Carrier's Action*

At the time of the shootings (Oct. 11, 1977) Marino was the named insured in a homeowner's policy issued by Carrier. As to personal liability coverage, the policy in pertinent part read thus: "This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient."

The policy specifically excluded from personal liability coverage "bodily injury or property damage which is either expected or intended from the standpoint of the insured."

In June of 1984 Carrier filed in superior court an action for declaratory relief (No. 551741), naming as defendants all of the parties to the Catelli action, including Marino and the Catellis. The complaint alleged that Carrier's policy provided no coverage for the conduct of Marino, because of the specific exclusion quoted above. Carrier sought a judicial declaration that it had no duty either to defend or to indemnify Marino. To this complaint all of the named defendants filed general denials.

In May of 1985, after Marino's convictions had become final in the state courts, Carrier moved for summary judgment in its declaratory relief action. In support of its motion Carrier submitted an abstract of the judgment of conviction, together with selected excerpts from the criminal trial reporter's transcript. The excerpts included testimony that the shootings were intentionally done, and that both Orlando and Peter Catelli had been shot in the back of the head at point-blank range. Carrier contended that because of the doctrine of collateral estoppel, the Catellis and other defendants were precluded from relitigating the issue of whether Marino's conduct was intentional. Therefore, argued Carrier, the specific exclusion in its policy governed, and it was not obliged either to defend or to indemnify Marino.

Marino himself filed no counterdeclaration. The Catellis, however, opposed the motion by a memorandum of points and authorities, to which they attached excerpts from the criminal trial record which would have supported a finding that Marino did the shootings either accidentally or in self-defense.

The motion was heard on July 15, 1985. The judge stated on the record that he had read all of the documents submitted to him. At the close of the hearing he took the matter under submission. Later that same day a minute order was filed, reading as follows: "The Court now makes its order on the motion taken under submission this day as follows: [¶] Motion granted."

Thereafter the judge signed a written judgment prepared by Carrier's counsel. The judgment provided in pertinent part "that the conduct of SALVATORE J. MARINO was willful and intentional and excluded by the insurance policy. Furthermore, it is determined that plaintiff GRAIN DEALERS MUTUAL INSURANCE COMPANY has no duty under said policy to indemnify SALVATORE J. MARINO for any judgments rendered against him arising out of that lawsuit or any cross-complaints based on the conduct of SALVATORE J. MARINO towards the CATELLIS as set out in their lawsuit, and that furthermore this court adjudges and decrees that plaintiff GRAIN DEALERS MUTUAL INSURANCE COMPANY has no duty to defend or to provide a legal defense under the terms of said policy."

From that judgment the Catellis and Marino appealed. Marino filed no brief, but adopted the opening brief of the Catellis, and informed us of the habeas corpus proceedings then pending in the district court. We granted a stay of this appeal to await the outcome of the federal court proceedings.

## II. DISCUSSION

In granting Carrier's motion for summary judgment, the court below apparently relied upon the doctrine of collateral estoppel. On no other theory can the decision be justified. Excerpts from the criminal trial submitted to the judge demonstrated the existence of a disputed fact, viz., whether the shootings were done with the intent to cause injury, or by accident or in self-defense. ■ "[E]ven an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability . . . unless it is done with a 'preconceived design to inflict injury.' [Citations.]" (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098].) If an insured acted in self-defense, although he intended the act, he acted "by chance and without a preconceived design to inflict injury just as though he were acting intentionally, although negligently, and injured someone." (*Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665]; accord, *Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326, 331-332 [206 Cal.Rptr. 609].) In other words, if Marino acted in self-defense Carrier's policy would provide coverage for his conduct.

But the judge found that Marino's conduct was "willful and intentional." ■ He could not do so by resolving the conflict in the facts given him, because it is not the function of a summary proceeding to decide issues of fact; instead, the inquiry is whether issues of fact exist to be tried. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62]; *Anaya* v. *Turk* (1984) 151 Cal.App.3d 1092, 1106 [199 Cal.Rptr. 187].) Undoubtedly the judge looked to the judgment in the criminal action, noted that the jury there had rejected Marino's claim of self-defense, and concluded—based upon the criminal verdicts and judgment—that no triable issue of fact remained to be resolved in Carrier's declaratory relief action.

The Ninth Circuit decision in *Marino* v. *Vasquez, supra,* 812 F.2d 499 effectively obliterated the judgment in the criminal action on the counts of murder and attempted murder. ■ It is well settled that application of the doctrine of collateral estoppel requires a final judgment on the merits. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]; accord, *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 874.)

■ We have found no California case which addresses the precise question here involved but the Restatement Second of Judgments does in section

16, at pages 146-147: "If, when the earlier judgment is set aside or reversed, the later judgment is still subject to a post-judgment motion for a new trial or the like, or is still open to appeal, or such motion has actually been made and is pending or an appeal has been taken and remains undecided, a party may inform the trial or appellate court of the nullification of the earlier judgment and the consequent elimination of the basis for the later judgment. The court should then normally set aside the later judgment." We are satisfied that the principles enunciated in the passage just quoted are consistent with California law.

■ As there now is no judgment of any kind on the murder counts, the doctrine of collateral estoppel cannot be used to uphold the grant of summary judgment. The issue of whether Marino willfully shot Peter and Orlando Catelli, i.e., with a preconceived design to inflict injury therefore remains to be adjudicated. On that issue there was conflicting evidence before the court below. Summary judgment proceedings cannot be used to resolve that conflict.

The judgment is reversed. Costs on appeal to appellants.

Agliano, P. J., and Capaccioli, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 10, 1988.