[No. D055894. Fourth Dist., Div. One. Dec. 22, 2010.]

BRUCE R. TALLEY, Plaintiff, Respondent and Appellant, v. VALUATION COUNSELORS GROUP, INC., et al., Defendants and Appellants, JOHN M. CLAREY et al., Defendants and Respondents.

## COUNSEL

Dreher Law Firm, Robert Scott Dreher and Matthew R. Miller for Plaintiff, Respondent and Appellant Bruce R. Talley.

Irell & Manella, Kenneth R. Heitz, Craig I. Varnen, Garland A. Kelley and Christopher Cowan for Defendant and Appellant Valuation Counselors Group, Inc.

Hill, Farrer & Burrill and Steven W. Bacon for Defendant and Appellant Bank of America Corporation.

Dion-Kindem & Crockett, William E. Crockett and Steven R. Skirvin for Defendant and Appellant Jerold V. Goldstein.

David A. Hahn Law Offices and G. Patrick Connors III for Defendant and Appellant Victor P. Dhooge.

Gary A. Kurtz for Defendants and Appellants Robert Kasirer, Debra Kasirer and Leo Dierckman.

Gordon & Rees, Kevin W. Alexander and Kimberly D. Howatt for Defendants and Respondents.

## Opinion

**HUFFMAN, J.**—Since 2001, this long-running dispute has traveled back and forth between state and federal courts at the respective trial and appellate levels. We now have before us the trial court's appealable orders vacating certain judgments of dismissal of an action, in which plaintiff, respondent and cross-appellant, Bruce R. Talley (Talley), asserted tort claims (fraud and related theories), based upon the different roles of several sets of defendants in alleged securities fraud activities in the 1990's, that allegedly ruined his career by drawing him into the schemes, in the role of a salesman of worthless bonds to private clients, who then sued him and the others.

We have previously visited these circumstances and related issues at the pleadings stage in this court's prior opinion in *Talley v. Miller & Schroeder* (Sept. 12, 2007, D048438) (nonpub. opn.) (our prior opinion). There, we reviewed three separate 2005 and 2006 demurrer dismissals with prejudice that were granted in favor of three sets of individual defendants who were involved in various ways in the securities transactions (here, sometimes the individual appellants).[1] We upheld those dismissals with prejudice as proper, based upon the existence of certain binding good faith settlement approvals that included "Bar orders" against further litigation, issued by the federal district court in Talley's related cross-action.[2]

In our prior opinion, we also acknowledged that a previous set of demurrer dismissals with prejudice existed as to another group of defendants (currently denominated the Clarey Respondents, who were previously officers of Talley's former employer, Miller & Schroeder).[3] Talley had attempted to

---

[1] The individual appellants group here is made up of (a) Robert Kasirer and his affiliated companies, and his wife Debra Kasirer, who were promoters of Heritage health care facilities and the recipients of investors' funds in the securities scheme, and their officer and affiliate Leo Dierckman (together, Kasirer); (b) Jerold Goldstein, another officer and affiliate of the Kasirer group that was attempting to develop the Heritage facilities; and (c) Victor Dhooge, an officer and key employee at Miller & Schroeder Financial, Inc. (Miller & Schroeder), where he and Talley formerly worked together.

[2] The Bar orders stemmed from federal litigation, *Betker Partners One v. U.S. Trust Corporation, N.A.* (C.D.Cal. 2001) No. CV 01-5752-DT-RCx (*Betker*) (the underlying federal action). As a defendant in that action, Talley filed a cross-complaint for indemnity and contribution, which he later dismissed as part of facilitating client settlements with other parties. The federal district court good faith settlement and Bar orders reflected the settlements between the Betker plaintiffs (nonparties here) and numerous of these defendants during 2004 and 2005, as we later outline.

[3] The Clarey Respondents formerly worked for Miller & Schroeder, and they are defendants and cross-respondents John M. Clarey, Kenneth E. Dawkins, Paul R. Ekholm and James E. Iverson. They obtained dismissals from the trial court and are cross-respondents here. Another such person, Edward J. Hentges, is referred to in the briefs but he has not been represented by counsel for the Clarey Respondents for many years, and he does not appear to be a party here.

appeal those dismissals, but in an order dated July 13, 2006, we acknowledged that Talley had conceded that his appeal should be dismissed as to those parties, and we did so.

However, it is next important to note that in our prior opinion, we still had before us Talley's claims against two corporate defendants, Valuation Counselors Group, Inc. (Valuation), the appraiser for real property that was security for the bonds, and U.S. Trust Corporation (U.S. Trust, now known as Bank of America), the indenture trustee for the worthless bonds (here, the corporate defendants).[4] In our prior opinion, we reversed, for appropriate further proceedings, additional demurrer dismissals as to those corporate defendants, finding that Talley should be given an opportunity to amend his complaint (in the absence of any showing that the Bar orders applied to the corporate defendants). However, in those further proceedings on remand, additional demurrers were filed by the corporate defendants (based on the same Bar orders in the underlying federal action), and were sustained without leave to amend. The corporate defendants accordingly, in February 2008, obtained dismissals with prejudice of Talley's complaint. No appeal was taken to this court from those later dismissals.

Meanwhile, from 2004 through 2009, Talley was proceeding with his related action in the federal courts, primarily dealing with the effect of the Bar orders and stays issued by the federal district court, after some clients settled their lawsuits against Talley and the others, and obtained several good faith settlement approvals and Bar orders. Our prior opinion, filed in September 2007, discussed the effect of those federal Bar orders in light of binding authority, as follows: "[Talley] has appealed that order to the Ninth Circuit Court of Appeals, and appeal is pending, but for our purposes, under the rule of *Levy v. Cohen* (1977) 19 Cal.3d 165, 172 [137 Cal.Rptr. 162, 561 P.2d 252] (*Levy*), it is currently deemed to be final. We must consider ourselves bound by the broad language of that Bar order." That analysis led us to uphold the demurrer dismissals, except as to the corporate defendants, and that opinion became final in October 2007.

Our record now shows that those Bar order and stay issues in the federal courts were not fully resolved until February 2009, when the district court implemented the Ninth Circuit opinion by modifying and restricting the Bar orders as directed.

In April 2009, Talley filed a motion to set aside the five judgments and orders of dismissal after demurrer that were previously entered in this action

---

[4] The party formerly known as U.S. Trust is now designated as Bank of America Corporation, its successor by merger with U.S. Trust Corporation and U.S. Trust Company, N.A.

in favor of both the three individual appellants and also the two corporate defendants (here, sometimes the Group of Five Appellants). They now challenge the September 2009 ruling of the trial court that granted Talley's motion, and that allowed him to file a second amended complaint updating his allegations to conform them to prior demurrer rulings. (Code Civ. Proc., § 473; all statutory references are to the Code of Civil Procedure unless otherwise indicated.) In these five appeals, each of the Group of Five Appellants contends the motion to set aside the dismissals was erroneously granted, because the trial court was correct in initially concluding that the final dismissals were not void or voidable, but then, the court erroneously went on to reinstate or revive the dismissed actions, in excess of its jurisdiction. (*Grain Dealers Mutual Ins. Co. v. Marino* (1988) 200 Cal.App.3d 1083 [246 Cal.Rptr. 410] (*Grain Dealers*).)

Talley cross-appeals the portion of the ruling that denied his motion to set aside the dismissals as to the other set of defendants, the Clarey Respondents, arguing that they should be treated the same as all other defendants, and the trial court had extensive inherent power to control the proceedings before it.

To address all the arguments on appeal, we first set forth background for understanding the identity of these parties and contentions. (Pts. I & II, *post.*) We then set forth basic guidelines for review of these legal issues. (Pt. III, *post.*) We next discuss the common issues raised by the Group of Five Appellants and in the cross-appeal. (Pt. IV, *post.*)

■ Our review of the record leads us to reverse the order to the extent it granted Talley's motion to set aside the dismissals and granted his request for leave to file a second amended complaint (SAC), because the court had no statutory authority nor any inherent equitable ability to revive this dismissed case, for the reasons to be explained. We accordingly affirm the order to the extent that it denied the motion to set aside the dismissals as to the Clarey Respondents.

I

### INTRODUCTION TO PARTIES, TRANSACTIONS AND LITIGATION

#### A. 2002 Origin of Action; Complaints; Related Federal District Court Activity

The issues raised on appeal are mainly legal and procedural in nature, so that specific details of the underlying disputes are not necessary. We quote from our prior opinion, endeavoring to set forth only those facts that are

relevant to the issues on appeal concerning Talley's motion to set aside the dismissals of his lawsuit. Generally: "[Talley] was a securities sales representative who was previously employed by securities firm [Miller & Schroeder], the now bankrupt predecessor of [a former defendant, the Marshall Group, Inc.] [Talley] alleges that in the scope of his employment by Miller & Schroeder, he sold worthless Heritage bonds to his investor clients, who then sued him and others, causing him to lose his livelihood and suffer from personal injury."[5]

In the underlying federal action, Talley was sued by one of his clients, the Betker family, that had purchased millions of dollars in Heritage bonds (asserting the Private Securities Litigation Reform Act of 1995; 15 U.S.C. § 78a et seq.). As a defendant in that action, in 2001, Talley filed a cross-complaint for indemnity and contribution. Later, he participated in global settlements of those matters with the Betkers. Part of the good faith settlement approval process was the issuance by the district court of those Bar orders, preventing the parties from further litigation of the securities claims.[6]

Talley's first state court complaint was filed in 2002, to sue the Group of Five Appellants and others on fraud and related theories, based upon their different roles in allegedly participating in the Heritage bonds transactions from 1996 to 1999. That state action was dismissed without prejudice during the settlement efforts in the federal action. (*In re Heritage Bond, supra*, 546 F.3d 667, 672–675.)

In the current action (a renewed version of Talley's state court allegations), the original complaint was filed in 2004 and amended in April 2005. Talley seeks to recover damages from the various defendants and respondents on different theories, based on the nature of their participation in the Heritage bonds securities fraud, and he claims financial loss of over $5 million. He contends he first learned of their breaches of duties toward him in October

[5] Miller & Schroeder filed for bankruptcy in Minnesota in January 2002 under its then current name, Securities Resolution Corporation, and it allegedly transferred any other assets to the Marshall Group, before going out of business. No issues are raised here about either Miller & Schroeder or the Marshall Group, which are not parties here, although some of their former employees are in the Clarey Respondents.

[6] While the state court proceedings leading to the September 2007 issuance of our prior opinion were pending, that underlying federal case was also pending, including Talley's two appeals to the Ninth Circuit Court of Appeals, contending that the Bar orders issued as to various of these defendants were overbroad. These appeals were related to a third such appeal in the underlying federal case. (9th Cir. case Nos. 05-55072, 05-55371, 05-56621.) Ultimately, the Ninth Circuit Court of Appeals issued its resolution of the Bar order issues in October 2008, and the district court implemented it in February 2009, to modify the Bar orders to reduce their breadth, as will later be discussed. (*In re Heritage Bond Litigation v. U.S. Trust Corp.* (2008) 546 F.3d 667 (*In re Heritage Bond*).)

2001. As to the corporate defendants, he claims they colluded with disloyal fiduciaries, to his direct injury.

Numerous demurrers were filed to the amended complaint, and were sustained without leave to amend, and dismissals with prejudice were entered. Talley appealed, leading to the issuance of our prior opinion, as we next outline.

### B. Prior Opinion Filed in September 2007; Parallel Track of Federal Appellate Activity from 2008 to 2009

Without totally recapping our lengthy prior opinion, we reiterate that we relied heavily upon the rule of *Levy v. Cohen, supra,* 19 Cal.3d 165, 172 (*Levy*), that since federal court appeals were pending of the Bar orders on the same theories, for our purposes, we construed the Bar orders as final, leading us to uphold the demurrer dismissals, for those defendants that had supplied copies of the Bar orders (not including the corporate defendants).[7] (§ 581, subd. (f)(2).) This disposed of the actions as against the individual appellants, Goldstein, Dhooge, and Kasirer.[8]

However, in the prior appeal, we noted that the record did not include any such documentation to show the corporate defendants were also subject to such Bar orders. Therefore, the Bar orders did not form the basis for our prior opinion as to the two corporate defendants (now also members of this Group of Five Appellants). Instead, we analyzed the other grounds of demurrer, and concluded that Talley must be given leave to amend his pleading as to the corporate defendants only (aiding and abetting/fraud). The dismissals were set aside on appeal only as to the corporate defendants. Our approach for reaching the merits was expressly based upon the lack of any indication that the corporate defendants were subject to the federal court orders approving settlement agreements and imposing Bar orders, etc. The parties do not dispute that our prior opinion was not appealed to a higher court, and it became final in October 2007.

However, after remand, the corporate defendants brought a new set of demurrers, now supplying to the trial court copies of the Bar orders that prevented this state court litigation from proceeding on the same theories.

---

[7] The Bar orders applied because the trial court found as to the individual defendants that the current state pleading related to the same primary rights against fraud that were allegedly violated and contested in the *Betker* case, or by parties in privity with them, in the context of Talley's dismissed federal cross-complaint for indemnity. (Evid. Code, §§ 452, 459.)

[8] As to the Clarey Respondents, the prior opinion noted they had already been dismissed as parties to that appeal, and therefore, we did not address any arguments about their potential liability to Talley, as none was cognizable on appeal.

These demurrers were sustained without leave to amend, and accordingly, in February 2008, dismissals with prejudice were ordered and notice given. (§ 581, subd. (f)(1).) No appeals were taken by Talley of those February 2008 dismissals.

In October 2008, the Ninth Circuit Court of Appeals issued its opinion analyzing, modifying and narrowing the Bar orders, and the district court implemented it in February 2009. (*In re Heritage Bond, supra*, 546 F.3d 667.) Specifically, the federal appellate court first ruled that Talley's appeal was not moot, simply because his state law claims had been dismissed and the dismissals were affirmed (as to the Group of Five Appellants, at different times, and the Clarey Respondents). (*Id.* at p. 675.) The federal appellate court read our prior opinion as clearly stating that our "reliance on the bar orders was premised on [the] view that [we were] bound by the broad language of the orders because the bar orders should be considered final while Talley's federal appeals were pending." (*Ibid.*) Thus, "[b]y specifying that it affirmed the dismissal of Talley's claims solely on this basis, [this] court implied that modification of the bar orders could revive Talley's claims." (*Ibid.*)

Next, the federal appellate court correctly read our prior opinion as not foreclosing Talley from pursuing remedial procedures in state court, "such as filing a motion under California Code of Civil Procedure section 473 to vacate the judgment or filing a new action in state court, once the bar orders are modified." (*In re Heritage Bond, supra*, 546 F.3d 667, 675.) The court continued, "We cannot order the superior court to reinstate Talley's claims, but by limiting the scope of the orders, we make it reasonably likely that he can succeed in obtaining reinstatement of his claims and, to the extent they are truly independent, have them heard on the merits," so the matter was not deemed to be moot. (*Id.* at p. 676.)

With respect to the merits of the Bar orders, the Ninth Circuit opinion analyzed them as overbroad, because "such bar orders may only bar claims for contribution and indemnity and claims where 'the injury is the non-settling defendant's liability to the plaintiff.' [Citation.] When we apply this standard to the bar orders at issue in this appeal, it is clear that *they are impermissibly broad insofar as they bar any genuinely independent claims.*" (*In re Heritage Bond, supra*, 546 F.3d 667, 680–682, italics added.) This meant that the district court was responsible for issuing a modified Bar order, which it did in February 2009. The federal appellate court concluded: "Once the bar orders have been modified, Talley will be able to pursue reinstatement of his claims in the superior court through the available procedures outlined above." (*Id.* at p. 681.)

As we later explain, nothing in the above opinion of the Ninth Circuit operated to relieve Talley from the obligation to maintain the viability of this state court action, which could have been done by appealing the two February 2008 dismissals with prejudice as to the corporate defendants, or possibly appealing to the California Supreme Court our September 2007 prior opinion. On this record, it appears that the only portion of Talley's state action that survived all of the previous appellate proceedings would have been the claims against the corporate defendants, but even those have been allowed to become final. Talley nevertheless argues that his action can be resurrected, as follows.

## II

### 2009 MOTION AND RULING; CURRENT APPEAL AND SUMMARY OF COMMON ISSUES RAISED

#### A. Motion by Talley to Set Aside Dismissals/File SAC

In April 2009, Talley filed his motion to set aside the judgments/orders of dismissal previously entered in this action, and for leave to file the SAC, against the Group of Five Appellants. (§ 473.)[9] In support, he provided an attorney declaration giving a history of the case and authenticating copies of the Bar orders and other pleadings. He argued that, as a matter of law, the Ninth Circuit's decision on the Bar orders, expressly referencing our 2007 prior opinion, rendered the dismissals subject to vacatur because they were based upon "void" Bar orders. Talley also contended it would be in the furtherance of justice to vacate the prior state orders, allowing him to proceed with his case. (*Grain Dealers, supra,* 200 Cal.App.3d 1083 [interpreting Rest.2d Judgments, § 16].)

In his request to file an SAC against the Group of Five Appellants, Talley represented that he had limited the scope of those allegations in accordance with the previous rulings on the various demurrers, regarding the different sets of defendants. He also noted that he had added new allegations based on recent investigation, particularly as to the Kasirer defendants, and had also named several new defendants.

Each of the Group of Five Appellants filed opposition to the motions, arguing the previous judgments of dismissal were not void or voidable under

---

[9] Under section 473, subdivision (d): "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order."

section 473, and no other cognizable ground for vacating them on collateral attack had been shown. They each argued their dismissals with prejudice must remain in force, based on Talley's failure to appeal the dismissals with prejudice of the corporate defendants, and his failure to persuade this court to set aside the other dismissals in the prior appeal. They also argued there was no basis to allow the filing of an SAC in a dismissed action.

In reply and at the hearing, Talley argued he did not appeal the February 2008 dismissals with prejudice as to the corporate defendants, because he believed that the issues were all before the Ninth Circuit Court of Appeals, such that he would have been charged with frivolousness by making any further challenges of any kind to the Bar orders, while the federal appeal was still pending. He nevertheless contended the trial court had some inherent power to set aside the previous dismissals, and that the two appellate opinions in the matter had encouraged him to seek to have his case decided on the merits, since the basis for the previous orders (preclusive Bar orders) no longer existed.

## B. Trial Court Ruling

The trial court heard argument and took the motion under submission. The request to set aside the judgments and orders of dismissal previously entered in this action, and for leave to file an SAC, was granted in part and denied in part. The court took judicial notice of various federal and state court pleadings, rulings, and documents, showing the history of the case. The court first observed that under section 473, "[t]he judgments/orders of dismissal that were based upon the Bar orders are not void on their face nor voidable." The court reasoned as follows: " 'A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' (*Lee v. An* (2008) 168 Cal.App.4th 558, 565 [85 Cal.Rptr.3d 620].) [¶] Here, the trial court and the Court of Appeal had fundamental authority over the subject matter, the question presented and the parties. There is no dispute that all parties were on notice of and participated in the appeals filed in the Court of Appeal and in the 9th Circuit court. The trial court and Court of Appeal did not act in excess of their jurisdiction or defined powers. There was no 'mistake, inadvertence, surprise, or excusable neglect.' Thus, neither CCP § 473(d) nor § 473(b) apply."[10]

 The trial court continued its analysis by stating: "This appears to be a question of first impression." It then analyzed cases on the finality of

---

[10] Under section 473, subdivision (b): "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

judgments, including *Grain Dealers, supra,* 200 Cal.App.3d 1083, which it found to be distinguishable on its facts, but "instructive." The court set out the analysis in *Grain Dealers* of the applicability of the text and comments to Restatement Second of Judgments, section 16 as follows: " 'If, when the earlier judgment is set aside or reversed, the later judgment is still subject to a post-judgment motion for a new trial or the like, or is still open to appeal, or such motion has actually been made and is pending or an appeal has been taken and remains undecided, a party may inform the trial or appellate court of the nullification of the earlier judgment and the consequent elimination of the basis for the later judgment. The court should then normally set aside the later judgment.' We are satisfied that the principles enunciated in the passage just quoted are consistent with California law." (*Grain Dealers, supra,* 200 Cal.App.3d at pp. 1088–1089.) The Restatement Second of Judgments comment quoted above in *Grain Dealers,* about setting aside a judgment, continues with the following language, which was also considered by the trial court: "When the later judgment is no longer open to a motion for a new trial or the like at the trial court level, *nor subject to appeal,* the fact of the nullification of the earlier judgment may be made the ground for *appropriate proceedings for relief from the later judgment . . . .*" (Rest.2d Judgments, § 16, com. c, p. 147, italics added.)

Thus, the trial court noted that "the *Grain Dealers* decision is not precisely on point—there, the appeal was still pending. However, similar to *Grain Dealers,* here the 9th Circuit's decision in *In re Heritage Bond, [supra,]* 546 F.3d 667 'effectively obliterated' the basis for the judgments/orders of dismissal." (The court went on to interpret our prior opinion, and we will defer discussion of that analysis until pts. III & IV, *post.*)

In conclusion, as to the Group of Five Appellants, the ruling states: "The Court is mindful of the public policy regarding finality of judgments. However, this case is that rare but 'appropriate proceeding' for the relief requested. As noted, the Court of Appeal was aware of the pending appeal in the 9th Circuit. The purpose of the Federal Court appeal was to modify the bar orders so that this lawsuit could proceed. The issue of whether [Talley's] State claims could be revived following the 9th Circuit decision was briefed and discussed by the 9th Circuit. [¶] Therefore, as to those judgments/orders of dismissal that were based on the bar orders, those judgments/orders of dismissal shall be set aside [regarding the Group of Five Appellants]."

The court separately addressed the issues concerning the Clarey Respondents, as follows: "It is undisputed that the demurrer brought by the Clarey [Respondents] was sustained on the ground of res judicata/primary rights. It was not sustained on grounds relating to the bar orders. It is further undisputed that the appeal to the order sustaining the demurrer of the Clarey

[Respondents] was dismissed because the appeal was not timely. Although the Court of Appeal reversed the ruling on the demurrers brought by Valuation and U.S. Trust on the ground of res judicata/primary rights, the ruling on behalf of the Clarey [Respondents] was not reversed. [¶] In light of the fact that the ruling on the demurrers as to the Clarey [Respondents] was not based on the bar orders, there is no basis to set aside the final judgments entered in their favor."

In conclusion, the court granted Talley leave to file his SAC against each of the Group of Five Appellants, with any pleadings challenges to be handled later by demurrer.

### C. Appeal, Motion to Dismiss the Appeal, Denial Order

The Group of Five Appellants each promptly filed their notices of appeal from the order granting the motion to set aside the judgments/orders of dismissal previously entered in this action.

Also, Talley filed his cross-appeal, challenging the trial court's denial of his motion as against the Clarey Respondents.

Next, Talley filed a motion requesting that this court dismiss the appeals, claiming they had been taken from nonappealable orders.

The Group of Five Appellants opposed the motion to dismiss, successfully arguing the special orders made after judgment were appealable under section 904.1, subdivision (a)(2). In our order, we granted judicial notice requests by Talley and one of the Group of Five Appellants, Valuation, regarding orders in connection with the federal court proceedings and appeal, including the modified Bar orders and other history. We then issued an order denying the motion, and now reach the merits.

### III

### *PRINCIPLES FOR REVIEW*

### A. Statutory and Inherent Powers of Court

We first limit the scope of the issues before us. We agree with the reasoning of the trial court, insofar as it concluded that the dismissal orders were neither void nor voidable, under section 473, subdivision (d). The court went on, however, to attempt to justify vacating the dismissals on other

grounds, based on Restatement analysis. (*Grain Dealers, supra*, 200 Cal.App.3d at pp. 1088–1089.)

■ Whatever the basis for the ruling, our standard of review for examining the validity of the trial court's procedural analysis is clearly de novo. Even though "[t]he inclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment . . . ," the foundational question remains on whether the dismissals were in some other respect void or voidable. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496 [52 Cal.Rptr.3d 862].) "A trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void: Once six months have elapsed since the entry of a judgment, 'a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face.' [Citation.] We review de novo a trial court's determination that a judgment is void." (*Cruz, supra*, at pp. 495–496; see *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

■ We therefore reject Talley's claim that a pure abuse of discretion standard somehow applies, under which the trial court was free to interpret our prior opinion, or evaluate the effect of the federal appellate proceedings, without regard to the current procedural posture of the case as of the time of the ruling. Rather, to the extent that Talley seeks equitable relief from judgment, such a basis for vacating a dismissal is more restrictive than the statutory grounds of section 473. In *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901, footnote 8 [187 Cal.Rptr. 592, 654 P.2d 775] (*Carroll*), the Supreme Court relied on *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857 [48 Cal.Rptr. 620, 409 P.2d 700], to say, " 'To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider.' " (Italics omitted.) For example, a stronger showing of the excusable nature of neglect is required to obtain relief under a court's equity power, than would be necessary for relief under section 473. (*Carroll, supra*, at p. 901, fn. 8.)

### B. Comparable Problems; Preliminary Analysis

At this juncture, we seek to avoid unnecessary distraction by distinguishing various inapplicable legal rules that are argued by the parties. First, this is not a matter in which law of the case principles are useful, because our prior opinion was issued strictly in the context of analyzing pleadings issues.[11]

---

[11] "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (9 Witkin, Cal Procedure (5th ed. 2008) Appeal, § 459, p. 515.)

Talley has never proved any of his allegations, and our prior opinion only addressed whether he should be given leave to further refine his allegations against the corporate defendants. Once the corporate defendants asserted coverage by the preclusive Bar orders, which were still in force at that time, dismissals were appropriately granted upon demurrers in February 2008.

On a procedural note, in our prior opinion, we observed that Talley earlier declined an opportunity to amend his then operative theories, which included fraud, and aiding and abetting breach of fiduciary duty. Talley now argues that we therefore somehow indicated he did not have to pursue his underlying case at later stages, such as by appealing the later dismissals. He is incorrect, because the first set of dismissals was final as of the time of the first opinion, and we were reviewing pleadings questions and allowing limited leave to amend. Now the question is whether dismissed cases may be revived, so our prior reasoning in that specific context does not rescue him.

We also emphasize that we have no occasion to express any opinions on any merit or lack of merit in Talley's potential claims that remained against the corporate defendants, after our prior opinion (aiding and abetting breach of fiduciary duty, and fraud as to Valuation). Previously, we noted the trial court had earlier deemed some of their remaining demurrer grounds to be moot, which we said was no longer the case (i.e., lack of sufficient facts, lack of standing, uncertainty and limitations bars). In any case, Talley made no amendments, and instead, the corporate defendants brought new demurrers, asserting the Bar orders, and they were sustained without leave to amend. No appeals were filed. Moreover, there is no claim of mistake or fraud that prevented Talley from having a hearing.

Despite the existence of the parallel tracks of the state and federal litigation here, this is not a case in which equitable tolling doctrines may apply, such as where different actions are pending in different courts, and a party may be allowed to pursue one set of remedies, without being penalized in a different forum, that may be able to award different remedies. (See 3 Witkin, Cal. Procedure, *supra*, Actions, § 741, pp. 966–970, citing, e.g., *Addison v. State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941] [on the concept that state limitations periods may be tolled during the period in which other remedies were being pursued]; *Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399].)

Although Talley attempts to argue the various defendants should be collaterally estopped from "re-arguing the same issues decided by the Ninth Circuit holding that the 'judgments' did not preclude Mr. Talley's claims," collateral estoppel is not an appropriate doctrine to resolve these issues. The only issues before the Ninth Circuit were whether the Bar orders were

overbroad, in terms of precluding any claims that arose out of an indemnity arrangement, as opposed to "independent" claims. The Ninth Circuit did not have any state law issues before it concerning the interpretation of section 473, under which this motion was brought, nor other procedural issues concerning the finality of state judgments. There is no sufficient identity of issues here. Instead, the Ninth Circuit was ruling on mootness issues, and deciding that Talley had potential avenues of relief that he could pursue in state court, but the Ninth Circuit acknowledged it did not have the power to resolve such state court issues.

Accordingly, Talley is not justified in claiming that either the Ninth Circuit appellate opinion or this court's prior opinion somehow guaranteed him a chance to assert his claims on the merits, against any of the defendants. Instead, both appellate courts were analyzing only the records before them at that time, concerning matters that were not yet final. Later, after our prior opinion became final in October 2007, the corporate defendants obtained dismissals with prejudice in February 2008. It may have been unfortunate for Talley's interests that the Ninth Circuit opinion assessing the Bar orders did not come out until October 2008, but the fact remains that nothing remained pending in this case after February 2008. As a threshold matter, Talley now appears to be attempting to revive an entirely dormant case, in which the dismissals are not void on the face of the record.

■ This situation is somewhat comparable to the problem of when a plaintiff's pending statutory cause of action is abolished, but where the plaintiff has obtained no vested rights in the statutory claim. In such a circumstance, " 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' " (*Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1]; see also, e.g., *Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1023–1025 [35 Cal.Rptr.3d 487].) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' " (*Governing Board, supra*, at p. 829.)

Here too, the particular timing of the events in this case means that the factual predicate for the state law dismissal orders, the federal Bar order, was not effectively modified until a later point in time, after all of the dismissals with prejudice occurred of the state law claims. Talley seems to believe that somehow, his case was automatically revived when that factual predicate was changed in 2008 and 2009 by the Ninth Circuit and the district court's implementing order. We reject that argument, because it presupposes that the state courts retained jurisdiction simply because the federal appeal was pending, but there is no showing of any stay order by the state court to toll or preclude the finality of the dismissals. Talley took the chance of litigating in

both state and federal forums, but he essentially abandoned his state case while he waited for the federal appellate opinion to come out. Just because he saw "no point" in appealing the last set of dismissals does not mean he correctly analyzed the procedural posture of the case.

As a preliminary analysis, we find that the last nail in the coffin of his action was hammered in when the two corporate defendants obtained their dismissals with prejudice, and no direct attack on the judgments by appeal was made. He created no vested interest in maintaining this action. That is the crucial issue in this procedural context, not whether this trial court was somehow endeavoring to overrule the substance of the prior trial court rulings, nor whether the court should enforce or comply with the prior opinion that we issued.

In light of these restrictive factors, we next examine whether Talley's theory has any merit, that the trial court nevertheless had the inherent discretion to overcome the difficulties that Talley was encountering in pursuing his state case. (*Grain Dealers, supra*, 200 Cal.App.3d 1083.)

IV

*ANALYSIS: APPEAL*

A. Inherent Powers of Court

 Even though the trial court nominally ruled that this set of dismissals was neither void nor voidable, it is still necessary for our purposes to better understand the distinction between those two concepts. In *Lee v. An, supra*, 168 Cal.App.4th 558 (*Lee*), the court explained: "The distinction between void and voidable orders is frequently framed in terms of the court's jurisdiction. 'Essentially, jurisdictional errors are of two types. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." [Citation.]' " (*Id.* at pp. 563–564.) The court went on to say, " 'A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' [Citation.]" (*Id.* at p. 565.)

 In *Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1344–1345 [46 Cal.Rptr.2d 516] (*Topa Ins.*), the court discussed the extent of the court's inherent judicial powers, as defined by

case law and statute. (§§ 128, 187.) "[T]he concept relates primarily to procedural matters, typically to control the court's own process, proceedings and orders, but also may relate to situations in which the rights and powers of the parties have been established by substantive law or court order but workable means by which those rights may be enforced or powers implemented have not been granted by statute. [Citations.]" (*Topa Ins., supra,* at p. 1344; see 2 Witkin, Cal. Procedure, *supra,* Courts, §§ 173–176, pp. 245–251.) "[C]ourts do have an inherent obligation to decide cases *properly brought before them . . . .*" (*Topa Ins., supra,* at p. 1345, italics omitted & added.) Our inquiry is whether Talley's request was properly brought before this trial court, in view of the earlier dismissals with prejudice that had been allowed to become final.

### B. Nature of Ruling and Restatement Analysis

Talley contends that the trial court correctly followed the analysis in *Grain Dealers, supra,* 200 Cal.App.3d 1083, of the applicability of the Restatement Second of Judgments, section 16. The court's ruling, after noting there was no void or voidable order, continued, "the bar orders have been reversed and modified in plaintiff's favor, hence the bar orders are no longer final. In fact, to the extent applicable here, the bar orders no longer exist. [¶] The [Restatement Second] of Judgments provides a solution for the particular procedural problem at bar: 'When the later judgment is no longer open to a motion for a new trial or the like at the trial court level, nor subject to appeal, *the fact of the nullification of the earlier judgment may be made the ground for appropriate proceedings for relief* from the later judgment . . . .' [(Rest.2d Judgments, § 16, com. c, p. 147, italics added.)]"

Based upon that reasoning, the trial court's ruling acknowledged the importance of the public policy regarding finality of judgments, but continued: "However, this case is that rare but 'appropriate proceeding' for the relief requested. As noted, the Court of Appeal was aware of the pending appeal in the 9th Circuit. The purpose of the Federal Court appeal was to modify the Bar orders so that this lawsuit could proceed. The issue of whether plaintiff's State claims could be revived following the 9th Circuit decision was briefed and discussed by the 9th Circuit. [¶] Therefore, as to those judgments/orders of dismissal that were based on the bar orders, those judgments/orders of dismissal shall be set aside."

■ This reasoning is flawed. First, the trial court was incorrect in stating that "to the extent applicable here, the bar orders no longer exist." Although the Bar orders were modified and restricted, that federal ruling did not automatically have legal consequences in state court, but rather, had to be implemented in a pending case. The text of section 16 of the Restatement

Second of Judgments specifies that a judgment is not nullified automatically when a predicate judgment is set aside; "appropriate proceedings" must be pursued. In order for Talley to be entitled to implement that ruling, he had to have a pending state case, in which appropriate proceedings could take place. He cannot persuasively argue that merely because his litigation was continuous in nature, and taking place in more than one forum, no dispositive finality of judgment issues could have arisen. (See *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231, 1237–1238 [283 Cal.Rptr. 878] [following *Grain Dealers, supra*, 200 Cal.App.3d 1083, to coordinate two conflicting orders issued in different counties].)

In *Grain Dealers, supra*, 200 Cal.App.3d 1083, it was a crucial factor in the appellate court's reasoning that in the underlying federal case, upon which the state court summary judgment ruling was predicated, "there now is no judgment of any kind . . . ." (*Id.* at p. 1089.) The summary judgment on review accordingly had to be reversed for resolution on the merits of the issue that was particularly important on the insurance coverage problem presented (whether the insured willfully shot the victims, for whom compensation was being sought from his insurer, in that action). (*Ibid.*) Our case is distinguishable, because the underlying Bar orders still exist and are not void (albeit they exist in modified form), and the federal appellate court ruling was not self-executing, but rather had to be interpreted and applied in the state court case, assuming that one remained pending before the trial court.

Unlike in *Grain Dealers*, this is not a pending direct appeal from the challenged state court rulings that applied the underlying federal judgment, which had changed. (*Grain Dealers, supra*, 200 Cal.App.3d at pp. 1088–1089.) Unfortunately for Talley, there was no preserved opportunity to litigate the effect of the federal ruling in state court, due to the dismissals that had been entered based upon the valid Bar orders, and that had not been set aside through any timely direct attack on judgment.

Further, although the Ninth Circuit discussed the issue of whether plaintiff Talley's state claims could theoretically be revived following its decision, that discussion was essential to the mootness question presented, and the court found the case was not moot. However, the court acknowledged that it did not have the power to reinstate the state claims, and that Talley would have to make appropriate application to do so. (*In re Heritage Bonds, supra*, 546 F.3d at pp. 675–676, 681–682.)

The Restatement language relied upon here contemplates that "*the fact of the nullification of the earlier judgment may be made the ground for appropriate proceedings for relief* from the later judgment . . . ." (Rest.2d Judgments, § 16, com. c, p. 147, italics added.) The earlier "judgment" (Bar

order) was not entirely nullified, but was only restricted and modified, and only pleadings issues were before the federal appeals court. Even assuming there was some "nullification," we must examine how these otherwise valid demurrer dismissals that were based upon the Bar orders came before this trial court on collateral attack, if the Restatement analysis is to be applied.

This was not an "appropriate" application for relief, since there was no longer a pending case in which the trial court could modify or correct any previous orders, that were not void. We disagree with Talley that the rule of *Levy, supra,* 19 Cal.3d 165, 172, granting finality to the federal order pending appeal, can only amount to a temporary bar to the state litigation he was pursuing, such that it may now be subject to removal by the trial court. Talley unpersuasively argues that the language that we used in our prior opinion, that the Bar orders were "currently" deemed to be final and that "[w]e must consider ourselves bound by the broad language of that Bar order," somehow showed that if the Bar orders were eventually lifted, he must be allowed to pursue his claims. However, he could only pursue his claims if he still had a viable lawsuit, such as by appealing (to delay the finality of the dismissals), or by somehow otherwise obtaining a stay order pending the resolution of the federal appellate proceedings.[12] The *Levy* rule reasonably promotes certainty of review in the appellate process. In our prior opinion, this court did not have the power to suspend the normal rules about finality of judgment, merely to protect any potential claims that Talley wanted to assert, nor did we intend to make any such representations. The later-occurring federal appellate opinion must now be taken into account in the current appeal, and nothing in our prior opinion could have resolved the finality issues that are now presented here.

■ Where adequate recourse under existing rules and procedures may exist, the concept of inherent judicial powers does not substitute for it nor extend it. (See *Topa Ins., supra,* 39 Cal.App.4th at pp. 1344–1345.) A court does have inherent power to vacate or set aside a judgment or order void on its face, sometimes colorfully referred to as " 'a dead limb upon the judicial tree.' " (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 9, p. 593.) This process is "outside the scope of authorized methods of direct attack and is appropriate only as a collateral attack." (*Ibid.*) However, the availability of such equitable relief from judgment is more restricted than relief that may be allowed pursuant to the statutory grounds of section 473. (*Carroll, supra,* 32 Cal.3d 892, 901, fn. 8.)

---

[12] In the Restatement Second of Judgments, section 16, comment b, page 146, the authors advise parties to keep their claims viable by seeking a stay of proceedings, awaiting the ultimate disposition of the underlying action. This was not done here.

Common examples of void judgments or orders that must be set aside on collateral attack, as invalid on the face of the record, are those in which the judgment is beyond the complaint's prayer, or otherwise grants excessive relief. (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 207, pp. 812–813.) In such cases, where the trial court lacked jurisdiction in a fundamental sense at the time of the challenged rulings, its orders would be void, and " ' "thus vulnerable to direct or collateral attack at any time." [Citation.]' " (*Lee, supra,* 168 Cal.App.4th 558, 563–564.)

In our case, the challenged orders of dismissal did not award excessive relief against a defendant, which would be void, but instead, they removed the possibility of Talley obtaining his desired relief in his action, as a matter of law. Since the dismissal orders were proper when rendered, they were neither void nor voidable, as the trial court recognized. Even if they were proper in light of then existing legal principles, did they later become void, because of the later action by the Ninth Circuit that changed their factual predicates?

No. These dismissal orders were valid when made and no direct attack by appeal was taken. They did not become void when the change in the law occurred, to become subject to collateral attack. If Talley had taken action to preserve the state court's jurisdiction (originally obtained when he took action enabling the court to obtain jurisdiction over the defendants, when he sued and served them with process), then there would still be a pending case in which this attack on judgment could be made. However, he allowed the dismissals with prejudice of his action to become final, and then the trial court had no remaining " 'power to hear or determine the case.' " It no longer had ongoing authority over the subject matter and the parties. (*Lee, supra,* 168 Cal.App.4th at pp. 563–564.)

Since the dismissal orders were not void on their face, this was not a proper method of collateral attack on them, nor an appropriate exercise of trial court equitable powers. We do not find this result to be offensive to principles normally protecting access to the courts, because Talley could have taken appropriate action to preserve the viability of his case, but he did not. He could not legitimately depend on the pending federal proceedings as operating naturally to extend the life of his state case, because they resolved only an issue of pleading, and it was his responsibility to keep his case alive and pending in both forums, so that those pleadings principles could be implemented here in the state forum.

### C. Different Dismissal Orders: Application

We next address whether it makes any difference that some of the dismissals with prejudice occurred in 2005 and 2006 (individual appellants;

upheld by this court in 2007), and some in February 2008 (corporate defendants). In both situations, the dismissals obtained by the several sets of defendants in this matter are not subject to permissible collateral attack. The change in the factual predicate for the dismissals that occurred in October 2008, when the Ninth Circuit issued its opinion restricting the proper scope of the Bar orders, did not undermine or void the otherwise proper dismissals, and this change does not justify the current orders granting Talley relief from the judgments.

To use a common expression, Talley cannot expect "to make bricks without straw." (Oxford English Dict. Online (2d ed. 1989) Straw, n. 1, <http://www.oed.com> [as of Dec. 22, 2010] ["phrase . . . commonly means '(to be required) to produce results without the means usually considered necessary' "].) In other words, his case is over and the trial court did not have the inherent power to "manage" proceedings that were no longer properly before it, nor may equitable relief be issued to bring this case file back from the dead.

In light of the entire history of the case, the important policy of promoting resolution of cases on the merits had to yield to the natural consequences of Talley's litigation choices in pursuing his actions in different forums, while failing to seek appropriate orders to safeguard their viability.

### D. Cross-appeal: Application

For the same reasons outlined above, Talley's arguments in his cross-appeal must fail. He cannot show that the trial court erroneously failed to grant his motion as to the Clarey Respondents, who were previously dismissed at both the trial and appellate levels.

Rather, the trial court correctly observed that the demurrers as to those defendants were previously sustained on other grounds that did not relate to the Bar orders. The court also observed that the Clarey Respondents had obtained dismissal from the proceedings leading to our prior opinion, and no rulings pertaining to the Clarey Respondents were reversed at that time. There was and is no basis to set aside the final judgments of dismissal entered in their favor, which are not void on the face of the record.

### DISPOSITION

The order granting Talley's motion to set aside judgments and orders of dismissal and to file a second amended complaint is reversed in part with directions to enter a new order denying the motion; affirmed as to the balance

of the order denying the motion. Each party shall bear its own ordinary costs of appeal, except Talley shall pay the costs of the Clarey Respondents.

McConnell, P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2011, S190259. Chin, J., did not participate therein.