**SANDY CITY, a municipal corporation, Plaintiff and Appellant,**

v.

**SALT LAKE COUNTY, a political subdivision of the State of Utah, Salt Lake County Planning Commission, McDonald's Corporation, and John Does 1–5, Defendants and Appellees.**

No. 890211.

Supreme Court of Utah.

Feb. 20, 1992.

Walter R. Miller, Sandy, and Christopher C. Fuller, Ogden, for Sandy City.

David E. Yocum, Kent L. Lewis, Salt Lake City, for Salt Lake County and Salt Lake County Planning Com'n.

Daniel W. Anderson, Jodi K. Feuerhelm, Diane H. Banks, Salt Lake City, for McDonald's Corp.

HALL, Chief Justice:

This is a companion case to *Sandy City v. Salt Lake County* ("the *Chevron* case").[1] Sandy City appeals the order of the Third Judicial District Court granting defendants' separate motions to dismiss Sandy's verified complaint, granting McDonald's and Salt Lake County's motions for summary judgment on all claims asserted in the complaint, and denying Sandy City's cross-motion for summary judgment. Sandy also appeals the trial court's decision to strike the affidavit of appraiser Gary Free, which was presented in support of Sandy's motion.

The facts of the case are not in material dispute and are set forth more fully in the *Chevron* case.[2] Those facts more particular to this case are set forth below. Sometime in 1987, McDonald's predecessors in interest, Priest, Yeates, Kjar, and Smoot ("the developers"), purchased approximately 4.18 acres of commercial property from Mickelson Enterprises.[3] On April 9, 1987, the developers applied to Salt Lake County to change the zoning on the 4.18–acre parcel from residential to commercial. Sandy voiced its objection to the zoning change, but the change was favorably recommended by the Salt Lake County Planning Commission ("the Planning Commission") and approved by the Board of County Commissioners ("the Board") on August 5, 1987.

---

1. *Sandy City v. Salt Lake County,* 827 P.2d 212 (Utah 1992).

2. *Id.,* 827 P.2d at 213–218.

3. *See* maps attached as appendix to the *Chevron* case, 827 P.2d at 226–227.

On August 16, 1987, Chevron U.S.A. applied for a conditional use permit to build a gasoline filling station on .7 acres of the original property. The Planning Commission heard and granted the application over Sandy City's objection. Sandy appealed the decision to the Board, which upheld Chevron's permit.

On November 6, 1987, Sandy City filed a complaint ("the *Chevron* action") in the district court against Salt Lake County, the developers, Chevron U.S.A., and others seeking to enjoin the development project because it constituted "urban development" approved in violation of Utah Code Ann. § 10-2-418. McDonald's was not made a party to that suit because it did not own property within the parcel but was merely acting as an agent for the developers.[4] On March 15, 1988, the district court granted summary judgment for defendants in the *Chevron* action, ruling against Sandy on all claims. Sandy appealed the decision of the district court to the Utah Court of Appeals, which affirmed the district court. Sandy then petitioned this court for certiorari. Our decision in the *Chevron* case is the conclusion of that litigation.

Meanwhile, on September 30, 1987, McDonald's filed an application with the Planning Commission for a conditional use permit to build a restaurant on approximately 1.3 acres of the original property. Sandy opposed the application. After a hearing, the Planning Commission approved the application on October 24, 1987. Sandy appealed the decision to the Board, which upheld the decision of the Planning Commission on December 9, 1987. Findings supporting the decision were issued by the Board on January 13, 1988. At the time the Board upheld the conditional use permit, McDonald's was not the owner of the project site but was still acting as agent for the developers. Therefore, Sandy, which had already initiated action against the de-velopers in the *Chevron* case, did not file a separate suit against McDonald's.

McDonald's purchased the property on March 24, 1988, and began site work for construction of its restaurant on April 25, 1988. When Sandy learned of the construction in late April, it sought an injunction in the *Chevron* case to prohibit development of the site. That injunction was denied on May 5, 1988. On May 10, 1988, Sandy requested that the Salt Lake County Attorney stop the McDonald's development. On May 27, 1988, Sandy received notice from the county attorney that no action would be taken. On June 13, 1988, Sandy filed this action against McDonald's and Salt Lake County. The McDonald's construction was completed on August 25, 1988.

Subsequently, McDonald's and Salt Lake County brought separate motions to dismiss Sandy's complaint or, alternatively, for summary judgment against Sandy. On April 24, 1989, the trial court granted defendants' motions against Sandy, ruling that (1) Sandy's motions were barred by the doctrine of laches; (2) Sandy was precluded by collateral estoppel from relitigating the issues raised in the *Chevron* case; (3) the affidavit of appraiser Gary Free should be stricken from the record for failure to comply with rule 56(e) of the Utah Rules of Civil Procedure; and (4) Sandy's claims against McDonald's failed on the merits because the value of the McDonald's project, exclusive of land and fixture costs, failed to rise above the $750,000 threshold needed to constitute "urban development" under Utah Code Ann. § 10-2-418. Sandy subsequently brought this appeal.

## I. LACHES

The district court granted defendants' motions for dismissal, holding that Sandy was guilty of laches. In order to prove that Sandy was guilty of laches, defendants had to show that there was a clear lack of diligence on the part of Sandy and that they suffered identifiable damage, in-

---

**4.** McDonald's was, however, on the mailing matrix for the *Chevron* case and received copies of all pleadings and other mailings sent to counsel in that case.

jury, or prejudice arising from the unwarranted delay.[5]

■ Defendants first argue that Sandy was required to appeal the Board's decision upholding McDonald's conditional use permit within thirty days of the issuance of the Board's findings and decision on January 13, 1988. The complaint in this case requested both a declaratory judgment and relief by way of an extraordinary writ. Declaratory judgments are governed by rule 57 of the Utah Rules of Civil Procedure and by Utah Code Annotated title 78, chapter 33. Extraordinary writs are governed by rule 65B(b)(2) of the Utah Rules of Civil Procedure. None of these rules prescribe a specific time limitation for filing a complaint. We have previously held that a petition for an extraordinary writ challenging the decision of a board of commissioners is equitable in nature.[6] Therefore, equitable rules concerning time limits for filing suit should govern the timeliness of this action.

■ Defendants argue that Sandy so delayed filing suit against McDonald's that the equitable doctrine of laches should bar the action. Sandy's actions in opposing the development of the parcel as a whole, and of McDonald's in particular, belie the argument that Sandy lacked diligence in opposing the project. Sandy opposed the zoning change for the entire 4.18–acre parcel, protested Chevron's application for a conditional use permit, initiated litigation against Chevron to block the project, protested McDonald's application for a conditional use permit, appealed the decision of the Planning Commission to the Board, filed an injunction in the *Chevron* case to prohibit development of the site, and petitioned the Salt Lake County Attorney to enjoin the development, all prior to filing its complaint against McDonald's on June 13, 1988.

These acts by Sandy show a diligent pursuit of its claims against the developers of the 4.18–acre parcel, including the known owners of the McDonald's acreage. When Sandy learned that McDonald's, which was not a party to the *Chevron* suit, was the owner of the property, it promptly acted by making a request to the county attorney and then through suit to block construction of the project.

■ McDonald's also argues that it incurred substantial costs and was prejudiced by Sandy's delay in filing suit. Upon review, however, it is clear that McDonald's ran up these costs with full knowledge of Sandy's position and of the risk that the project would later be found in violation of the urban development law. Therefore, any losses incurred by McDonald's were taken as the result of a calculated risk that Sandy would not prevail on its claims. Costs voluntarily undertaken in the face of a known risk of litigation cannot be used later to support a claim of prejudice due to laches.[7]

## II. COLLATERAL ESTOPPEL

■ The trial court relied on the doctrine of collateral estoppel in holding that Sandy could not relitigate those issues it had raised in the *Chevron* case. We do not need to determine whether the trial judge was correct in holding that the criteria for collateral estoppel were met, since the decision relied upon for the finding of collateral estoppel has been overturned in the *Chevron* case.[8] Section 16 of the Restatement (Second) of Judgments addresses the problem of judgments made in reliance on an adjudication that is later overturned or va-

5. *See Leaver v. Grose,* 610 P.2d 1262, 1264 (Utah 1980); *Papanikolas Bros. Enter. v. Sugarhouse Shopping Ctr. Assoc.,* 535 P.2d 1256, 1260 (Utah 1975); *Felix v. Supreme Court of County of Pima,* 92 Ariz. 247, 375 P.2d 730, 732 (1962).

6. *Peatross v. Board of Comm'rs of Salt Lake City,* 555 P.2d 281, 284 (Utah 1976).

7. *See Leaver v. Grose,* 610 P.2d at 1264.

8. *See Chevron,* 827 P.2d at 220–224.

cated.[9] Comment c to this section identifies the proper solution to the problem of the remaining second judgment as follows:

> If, when the earlier judgment is set aside or reversed, the later judgment is still subject to a post-judgment motion for a new trial or the like, or is still open to appeal, or such a motion has actually been made and is pending or an appeal has been taken and remains undecided, a party may inform the trial or appellate court of the nullification of the earlier judgment and the consequent elimination of the basis for the later judgment. The court should then normally set aside the later judgment.[10]

In the instant case, the appeal of the second judgment is properly before this court, and therefore, the proper course is to set aside the trial court's decision that Sandy's claims were barred by collateral estoppel.[11]

### III. "URBAN DEVELOPMENT"

 In the *Chevron* case, this court determined that improvement of the entire 4.18-acre parcel, including the sites occupied by the Chevron station and the McDonald's project at issue in this case, constituted urban development approved in violation of the statute.[12] The holding in that case controls our decision here. It is clear that if Salt Lake County had no authority to approve development of the Chevron station because improvement of the entire 4.18-acre parcel of which it was a part constituted urban development in violation of section 10–2–418, the County also lacked the authority to approve development of the McDonald's restaurant on that same 4.18-acre parcel. Therefore, McDonald's owners will have to participate in proper annexation procedures or otherwise resolve their conflict with Sandy in conformity with the holding of the *Chevron* case. Because the larger parcel upon which the McDonald's restaurant is located has been found to be urban development in violation of section 10–2–418, there is no need to determine whether the individual McDonald's project qualifies as urban development.

Because of our holding that the parcel upon which the McDonald's restaurant rests is in an area of urban development, we do not need to determine the validity of Sandy's claim that McDonald's conditional use permit was granted in violation of county ordinance, nor are we required to determine the propriety of the trial court's ruling striking Gary Free's affidavit.

---

**9.** This section provides:

§ 16. Judgment Based Upon a Judgment That Is Subsequently Reversed

A judgment based on an earlier judgment is not nullified automatically by reason of the setting aside, or reversal on appeal, or other nullification of that earlier judgment; but the later judgment may be set aside, in appropriate proceedings, with provision for any suitable restitution of benefits received under it. Restatement (Second) of Judgments § 16 (1980). For cases relying on this section, see, e.g., *Harmsen v. Smith,* 693 F.2d 932, 945 (9th Cir.1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Grain Dealers Mut. Ins. v. Marino,* 200 Cal.App.3d 1083, 246 Cal. Rptr. 410, 413 (1988); *Banks v. City of Ames,* 369 N.W.2d 451, 458 (Iowa 1985). *See also Copper State Thrift & Loan v. Bruno,* 735 P.2d 387, 390 (Utah Ct.App.1987) (judgment final for purposes of res judicata until reversed on appeal).

**10.** Restatement (Second) of Judgments § 16, cmt. c (1980).

**11.** Some jurisdictions hold that a decision is not final for purposes of res judicata until that decision is affirmed on appeal by the highest court with jurisdiction for appeals or until the time for filing appeals is past. *See, e.g., Benham v. Plotner,* 795 P.2d 510, 512 (Okla.1990); *Chau v. Seattle,* 60 Wash.App. 115, 802 P.2d 822, 825 (1990). Under these decisions, the summary judgment granted by the trial court was improper and would therefore require reversal. Because the result reached under these cases and under the Restatement's treatment of the problem is the same, we do not need to determine at this time which line of authority we would follow to reach that result.

**12.** *Chevron,* 827 P.2d at 223–224.

The trial court's decision is reversed and remanded for proceedings consistent with this opinion.

HOWE, A.C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.