NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SOUTHWEST FABRICATION LLC, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, et al, *Defendants/Appellees*.

No. 1 CA-CV 18-0588
FILED 12-17-2019

Appeal from the Superior Court in Maricopa County
No.  CV 2017-008552
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Zeitlin v. Zeitlin PC, Phoenix
By Dale S. Zeitlin
*Counsel for Plaintiff/Appellant*

Sanders & Parks PC, Phoenix
By Shanks Leonhardt
*Counsel for Defendants/Appellees*

Gaona Law Firm, Phoenix
By David F. Gaona
*Counsel for Defendant/Appellee, TALIS Construction, Co.*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

**¶1**        Southwest Fabrication, LLC, ("SWF") appeals the superior court's orders (1) granting summary judgment on SWF's special action complaint filed against the City of Phoenix and members of the city council (collectively, "the City") and TALIS Construction Corporation ("TALIS"); (2) denying SWF's motion for relief from judgment; and (3) awarding the City and TALIS attorneys' fees under A.R.S. § 12-341.01. For the following reasons, we affirm.

## BACKGROUND

**¶2**        On October 28, 2016, the City issued an invitation for bids ("IFB") for bus stop enhancements. SWF and TALIS were the only bidders. Among other things, the IFB required that bids include a pre-approved solar-powered operating electrical system to light the bus shelters. City staff approved the proposed electrical systems submitted by SWF and TALIS.

**¶3**        SWF's bid price was $10,165,446 and TALIS's bid price was $9,512,975. In January 2017, City staff recommended that the contract be awarded to TALIS as the lowest responsive, responsible bidder. SWF filed a protest, asserting in part that (1) TALIS was not a responsible bidder because it did not meet the IFB's work-experience requirements, and (2) TALIS's bid was not responsive because it did not comply with the electrical-system requirements. City staff denied SWF's protest and SWF appealed. Following an evidentiary hearing, a hearing officer recommended denying SWF's appeal. The city manager adopted the hearing officer's findings and denied the appeal. The city council executed the contract with TALIS on May 10, 2017.

**¶4**        SWF filed a special action complaint in the superior court on May 25, 2017, reiterating the allegations raised at the bid-protest hearing and asking the court to issue a preliminary injunction, rescind the contract

award to TALIS, and award the contract to SWF. That same day, TALIS met with City staff and agreed to prepare three different prototypes of bus shelter configurations and refurbishments. On May 31, TALIS began performing the services outlined in the contract. By June 15, TALIS had performed work on 66 bus shelters.

¶5        In response to SWF's complaint, the City filed a motion for summary judgment, in which TALIS joined. On June 19, SWF filed an application for preliminary injunction and request to consolidate with the trial on the merits. After oral argument, by minute entry dated September 13, 2017, the superior court denied SWF's application for preliminary injunction, finding in part that its claims were barred by laches and were moot. SWF did not seek to appeal that order.

¶6        After allowing the parties to engage in limited discovery and conducting oral argument, the court granted summary judgment in favor of the City and TALIS, affirming its prior rulings. The court also awarded attorneys' fees to the City and TALIS under § 12-341.01. SWF unsuccessfully sought post-judgment relief, and this timely appeal followed.

## DISCUSSION

¶7        To prevail on claims raised in a special action complaint, a plaintiff must demonstrate: (1) "the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion"; (2) "the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority"; or (3) a "determination was arbitrary and capricious or an abuse of discretion." Ariz. R.P. Spec. Act. 3. As a threshold matter, however, a court may deny special action relief if the plaintiff fails to pursue its claims in a timely manner. *See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 192 (App. 1983); *Western Sun Contractors Co. v. Super. Ct.*, 159 Ariz. 223, 227 (App. 1988).

### A.    Laches

¶8        SWF argues its claims are not barred by laches because it timely sought to preserve the status quo, the contract is severable, and the City and TALIS have unclean hands. We review the superior court's finding on laches for abuse of discretion. *Korte v. Bayless*, 199 Ariz. 173, 174, ¶ 3 (2001). An abuse of discretion occurs if the record lacks substantial evidence supporting the court's conclusion. *Rash v. Town of Mammoth*, 233 Ariz. 577, 583, ¶ 17 (App. 2013). We review de novo the court's legal

conclusions. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 47, ¶ 9 (App. 2007).

**¶9** The laches doctrine is an equitable defense "designed to discourage dilatory conduct." *Sotomayor v. Burns*, 199 Ariz. 81, 82–83, ¶ 6 (2000). "Laches will generally bar a claim when the delay is unreasonable and results in prejudice to the opposing party." *Id.* at 83, ¶ 6. To determine whether delay was unreasonable, we consider the justification for the delay, the extent of the plaintiff's advance knowledge of the basis for the challenge, and whether the plaintiff exercised diligence in preparing and advancing his case. *See Harris v. Purcell,* 193 Ariz. 409, 412, ¶ 16 (1998). "The unreasonable delay must also cause prejudice to either the opposing party or the administration of justice, 'which may be demonstrated by showing injury or a change in position as a result of the delay.'" *Rash*, 233 Ariz. at 583, ¶ 18.

**¶10** Two cases are helpful in assessing whether the superior court erred in finding that SWF's claims were barred by laches. In *ASH*, 138 Ariz. at 191–92, a school bus supplier ("ASH") whose bid was unsuccessful sought to invalidate a contract between a school district and the successful bidder and to compel the district to award the contract to ASH. *Id.* The superior court denied relief, but before briefing was complete for the ensuing appeal, the buses were paid for and delivered. *Id.* We held that because the contract had been performed, the relief ASH sought would be futile and therefore the case was moot. *Id.* We reasoned that "[b]y failing to obtain any interlocutory stay or injunction to enjoin performance of the disputed contract, ASH did not protect the status quo," and that failing to stay the contract's performance "made the issue of its propriety moot." *Id.* at 192.[1]

**¶11** By contrast, in *Western Sun*, 159 Ariz. at 225, 227, we found that laches did not bar Western Sun Contractors Company's ("Western Sun") action because it took steps to preserve the status quo throughout the litigation. A city awarded a construction contract to Pipe Tech, Inc. ("Pipe Tech") because it determined that Pipe Tech was the lowest bidder. *Id.* at

---

[1] Cases involving mootness are often instructive in analyzing whether laches applies because they share the common thread that a party may lose the right to have its claims heard on the merits if it does not timely seek relief or take steps to preserve the status quo. *See e.g.*, *Korte*, 199 Ariz. at 174, ¶ 3; *Harris,* 193 Ariz. at 412, ¶ 16; *Mathieu v. Mahoney*, 174 Ariz. 456, 458 (1993); *Prutch v. Town of Quartzsite*, 231 Ariz. 431, 435, ¶ 13 (App. 2013), *as amended* (Feb. 26, 2013).

225. One day after the contract was executed, Western Sun obtained an interlocutory stay to enjoin the city from proceeding with the contract. *Id.* at 226. When the superior court later denied relief, Western Sun filed a special action the next day, obtained a stay at the appellate level, and was granted an accelerated briefing schedule. *Id.* We held that Western Sun preserved the status quo because it timely obtained an injunction before any construction began. *Id.* at 227. We also concluded that Pipe Tech had suffered no significant reasonable change in position or irreparable harm because all the steps it took before the injunction was issued were preparatory to contract performance. *Id.* (noting that notifying utilities of contemplated construction work, obtaining permits, and ordering supplies and equipment were preparatory acts).

¶12         Here, SWF failed to timely seek or obtain a preliminary injunction or otherwise preserve the status quo throughout litigation. As the superior court observed:

> On May 10, 2017, the City of Phoenix and Talis executed the contract. On May 26, 2017, Talis began work on the contract by meeting with the City of Phoenix and preparing mock ups of the shelter projects and refurbishments to other bus shelters. On May 31, 2017, Talis began actual performance of the contract. By mid-June, Talis had worked on . . . 6[6] bus shelters.

Despite being aware of these developments, SWF did not file its application for preliminary injunction until June 19, 2017. When the superior court denied the application, SWF did not appeal the ruling, seek a stay, or pursue special-action relief in this court. As of the date of the superior court's judgment, TALIS had been performing work under the contract for more than ten months.

¶13         Read together, *ASH* and *Western Sun* make it clear that a party must act to preserve the status quo before contract performance begins to avoid laches. SWF unreasonably delayed by waiting until after construction was well underway to file its application for preliminary injunction. And unlike Western Sun, SWF did not diligently advance its case when it failed to appeal the superior court's order denying its application.

¶14         SWF urges us to follow *Sandy City v. Salt Lake City*, 827 P.2d 227 (Utah 1992). That case, however, supports our analysis. Sandy City challenged Salt Lake City's zoning change and grant of a conditional use

5

permit to McDonalds to develop a restaurant on a parcel of land formerly zoned as residential. *Id*. at 229. The Utah Supreme Court ruled that Sandy City's claim was not barred by laches because Sandy City diligently pursued its case at each step of the litigation, including seeking an injunction before any construction began and appealing when the district court denied the injunction. *Id*. at 230. SWF did none of these things. It waited to file its application for preliminary injunction until after construction had already begun and then failed to appeal when the superior court denied its application. *Sandy City* is consistent with the rule set forth in *ASH* and *Western Sun*.

**¶15**　　　　SWF argues that it timely moved to preserve the status quo by asking the superior court for a preliminary injunction in its unverified complaint and emailing the City and TALIS requesting that they voluntarily refrain from entering a formal contract. This fails for at least two reasons.

**¶16**　　　　First, a complaint must be verified to allow a plaintiff to obtain an injunction on the complaint alone. A.R.S. § 12-1803(B); *Barnet v. Bd. of Med. Examiners*, 121 Ariz. 338, 340 (1979) ("This statute means that relief on the 'complaint alone' shall not be granted unless the complaint is verified."). SWF's complaint was not verified; thus, it could not obtain a preliminary injunction on that basis alone.

**¶17**　　　　Second, the email that SWF sent to the City and TALIS was insufficient to preserve the status quo. *ASH* and *Western Sun* confirm that, barring some voluntary agreement, a party seeking to preserve the status quo must obtain an injunction or stay to avoid a later finding of laches or mootness. *See ASH*, 138 Ariz. at 192 ("By failing to obtain any interlocutory stay or injunction to enjoin performance of the disputed contract, ASH did not protect the status quo . . . ."); *W. Sun*, 159 Ariz. at 227 ("Western Sun timely obtained an injunction in this matter before any construction began, and thus preserved the status quo."). SWF knew that the City and TALIS executed the contract on May 10, 2017, and were required to begin performing work under the contract on May 31, 2017. Emailing the City and TALIS to request that they not formalize a contract they had already executed and incurred obligations under was insufficient to preserve the status quo.

**¶18**　　　　Further, SWF's unreasonable delay prejudiced TALIS. Unlike the preparatory steps Western Sun took, by the time SWF filed its application for preliminary injunction TALIS had begun to perform the contract and had already worked on 66 bus stops. *Ramsey v. Arizona*

*Registrar of Contractors*, 241 Ariz. 102, 109, ¶ 22 (App. 2016) ("We will not set aside the trial court's factual findings unless they are clearly erroneous."). SWF prejudiced TALIS by waiting until TALIS changed its position before moving to preserve the status quo.

**¶19** SWF asserts that TALIS is not prejudiced and that laches is unavailable because the contract between the City and TALIS is severable. "A contract may be considered severable when the consideration given is not single, but apportioned. When separate consideration is given for a portion of a contract, that part of the contract may be considered severable." *Verma v. Stuhr*, 223 Ariz. 144, 158 (App. 2009) (internal citations omitted). However, this does not end our inquiry. As our supreme court observed in *Waddell v. White*:

> Primarily, the question of whether a contract is entire or severable is one of intention, which intention is to be determined by the language which the parties have used and the subject matter of the agreement. A contract may both in its nature and by its terms be severable, and yet rendered entire by the intention of the parties. We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable. The divisibility of the subject matter, or the apportionment of the consideration, while they are both items to consider in determining whether a contract is entire or severable, are not conclusive.

51 Ariz. 526, 540–41 (1938) (internal citations omitted).

**¶20** Here, the parties intended the contract to be entire rather than severable. When the City solicited bids, the invitation was to bid on all work outlined in the contract, not a portion of it. And when the City awarded the contract to TALIS, it awarded the contract based on the price of TALIS's bid for completion of all work outlined in the contract. A contract for the building and refurbishment of many individual bus stops could be viewed as severable by its nature and terms; however, "[t]he divisibility of the subject matter, or the apportionment of the consideration . . . , are not conclusive." *Id.* at 541. The price of the bid to complete work on the bus stops, as a whole, is the essence of the contract between the City and TALIS, and the basis for the award. When TALIS bid on the contract it had two choices: take the whole or take none. The contract is not severable.

¶21 Finally, SWF counters that laches does not apply due to the doctrine of unclean hands. "It is a cardinal rule of equity that he who comes into a court of equity seeking equitable relief must come with clean hands." *MacRae v. MacRae*, 57 Ariz. 157, 161 (1941). "[I]t is the moral intent of the party seeking relief, and not the actual injury done, that is controlling." *Weiner v. Romley*, 94 Ariz. 40, 42–43 (1963). Misconduct that would deprive a party of equitable relief must be willful. *Id*. at 43.

¶22 SWF argues the City secretly never intended to require TALIS to comply with the requirements in its IFB, and the City and TALIS conspired to fraudulently conceal from SWF that the bus stops TALIS produced, including the electric systems, fall below the IFB requirements. Therefore, according to SWF, the City and TALIS cannot rely on the equitable defense of laches. SWF's assertion that the bus stops do not meet the IFB requirements is based on the declaration of one of its employees, who inspected several of the bus stops TALIS constructed and reported that they fall below the standards set out in the IFB.

¶23 The superior court found that (1) the City complied with the applicable code and terms when it awarded the contract to TALIS; and (2) SWF did not prove the City's engineer acted improperly when he decided that TALIS's electric system met the IFB requirements. However, even if SWF's allegation that the bus stops TALIS constructed fall below the IFB requirements is true, it does not establish that the City secretly did not intend to hold TALIS to the terms of the contract, nor does it demonstrate a conspiracy between the City and TALIS to conceal that alleged intent from SWF. Because SWF has not shown willful misconduct on the part of the City or TALIS, its unclean-hands defense fails. In sum, the superior court did not abuse its discretion in finding that SWF's claims were barred by laches.[2]

### B. Attorneys' Fees Award

¶24 SWF contends that the superior court erred in awarding attorneys' fees to the City and TALIS under A.R.S. § 12-341.01 because this action is a challenge to the alleged illegal award of a contract rather than an action arising out of a contract. A.R.S. § 12-341.01. SWF does not challenge the amount of the fees awarded.

---

[2] Because we do not disturb the superior court's laches ruling, we do not address the merits of TALIS's bid challenge or whether the court erred in denying SWF's motion for post-judgment relief.

¶25        As an initial matter, we note SWF requested an award of attorneys' fees under § 12-341.01 in its cross-motion for summary judgment. After the court ruled against SWF and stated it was awarding fees to the City and TALIS upon submission of affidavits, SWF argued for the first time that fees were not recoverable under § 12-341.01. SWF cites no authority suggesting a party may properly reverse its position as to fee eligibility after the court issues an adverse ruling. Regardless, we are not persuaded by SWF's argument that fees could not be awarded under § 12-341.01.

¶26        This court's decision in *ASH*, 138 Ariz. at 192, resolves the issue. ASH argued that its lawsuit seeking to invalidate the school district's contract award to a competing bidder did not arise out of a contract but was instead a petition to compel Mesa Schools to perform a legal duty. *Id*. We disagreed, explaining that our "interpretation [was] consistent with the broad statutory language providing for the award of attorneys' fees 'in *any* contested *action*.'" *Id*. We further reasoned that "[b]y focusing on the procedural context of th[e] special action . . . ASH ignores its substantive nature." *Id*.

¶27        SWF's complaint sought to invalidate the City's contract award to TALIS and have the contract awarded to SWF. As in *ASH*, it is the contract that prompted the suit. *Id*. Accordingly, the superior court did not err in implicitly finding that the City and TALIS were eligible for an award of attorneys' fees under § 12-341.01.

¶28        SWF argues nonetheless that awarding attorneys' fees in this case contravenes public policy, relying on *Wistuber v. Paradise Valley Unified School District*, 141 Ariz. 346, 347 (1984). However, our supreme court expressly distinguished *Wistuber* from *ASH* in the same paragraph SWF quotes from:

> Moreover, this action differs from the type of contract action at issue in *Ash*. Here, petitioners are challenging the constitutionality of the action of a public body. An award of attorney's fees would be contrary to public policy in this case because it would have a chilling effect on other parties who may wish to question the legitimacy of the actions of public officials. Where aggrieved citizens, in good-faith, seek a determination of the legitimacy of governmental actions, attorney's fees should not usually be awarded. Courts exist to hear such cases; we should encourage resolution of constitutional arguments in court rather than on the streets.

*Id*. at 350. The supreme court clarified that the public policy encouraging the determination of the legitimacy of governmental actions in courts applies to constitutional questions as specifically distinguished from the type of actions at issue in *ASH*—the same actions at issue here.

## CONCLUSION

**¶29** We affirm the superior court's orders (1) granting summary judgment in favor of the City and TALIS; (2) denying SWF's motion for relief from judgment; and (3) awarding the City and TALIS their reasonable attorneys' fees and costs. Because SWF has not prevailed on appeal, we deny its request for attorneys' fees and costs. In our discretion, we award reasonable attorneys' fees to the City and TALIS, as well as taxable costs, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA